# Huss, Appellant *v.* Jacobs.

| 210 | 145 |
|-----|-----|
| 30 SC | 2392 |

*Deed—Separation of surface from minerals—Reservation—Coal—Estate in fee simple—Adverse possession.*

Where a person conveys land, reserving to himself coal thereunder, the grantee takes an estate in fee simple in the surface, and the grantor reserves to himself an estate in fee simple in the coal. Notorious hostile possession kept up for twenty-one years against either will give title to an intruder, but no permissive intrusion nor mere unresented occasional trespasses will affect the stability of the title of either,

*Deed—Reservation of coal—Abandonment—Estoppel—Adverse possession.*

A person conveyed land reserving the coal thereunder. The deed was duly recorded. Some years afterwards the grantor left the state and never personally operated or mined the coal. No taxes were assessed separately against the coal, and whatever taxes were assessed were paid by the owners of the surface. The owners of the surface and other parties mined and took away wagonloads of coal, but this was done only at intervals, and there was never any continuous mining operations. There was some vague testimony by an aged witness that the owner of coal had witnessed an agreement of sale by his grantee without mentioning the fact of the existence of the reservation; but the agreement was not produced in evidence, and for all that appeared the reservation may have been noted in the agreement. Another witness testified that the owner of the coal had said before he left the state that all he had left in the county was a certain small lot and that this was claimed by another person. *Held,* that the evidence was insufficient to establish an estoppel, to show an abandonment, or to establish in anyone title by adverse possession against the owner of the coal.

Argued Oct. 18, 1904. Appeal, No. 82, Oct. T., 1904, by plaintiff, from judgment of C. P. Greene Co., Nov. T., 1901, No. 41, on verdict for defendant, in case of Mary Jane Huss, v. William R. Jacobs et al. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Reversed.

Ejectment for coal in Franklin and Jefferson counties. Before CRAWFORD, P. J.

The facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[They say they have shown facts and circumstances which should convince the jury that Simon R. Huss, the original owner of this tract, has long since abandoned any claim or right of property in this particular coal in question, and that his acts and declarations detailed here by them, together with the other facts and circumstances in the case, showing the payment of taxes by subsequent parties who claim to hold the land in fee ; that all these facts taken together show he had abandoned any intention of claiming his right under this exception which appears in the deed from him to Richard Long. Or, in other words, he has acted and talked in such a way as to completely estop himself from setting up a claim to the coal, which was his by virtue of that exception in the deed from him to Long. And of course if such facts existed, the plaintiff, being

his grantee under the deed of March 2, 1900, would have the same burden to bear. She would be estopped the same as Simon R. Huss would be estopped if the facts go to show an estoppel.] [6]

[It seems in 1875 Simon R. Huss, the original owner of this land, moved away from this county to Fairfield, Jefferson county, Iowa, and has been a resident of that place since that time. I believe he states in his testimony that he never has returned to his native county.

He said that during his residence here he took coal from the coal banks or openings, where such openings occur on the premises, whenever he wanted to. The plaintiff cites that fact as showing some degree of active ownership on his part. Since he left in 1875 he has not undertaken to operate these mines, either through himself or any agent; he never has paid any taxes on the coal, and there never has been any assessment on the assessment rolls in the township where the coal is located assessing the coal to him. There is no dispute about that fact.] [7]

You have heard the deposition of Mr. John H. Hoge read. It is offered on the part of the defendants to show that prior to the time the deed was made by Richard Long and wife to Abijah Huss, Simon R. Huss, the original owner and the one through whom this plaintiff claims the coal, had a conversation or meeting in which the matter of the transfer of the land from Richard Long to Abijah Huss was talked over.

He was summoned from Waynesburg on November 11, 1866, or a short time before that, when these parties entered into an article of agreement. The defendants argue from the testimony which they have read to you that Hoge stated that the matter was talked over at the time Richard Long made this article to Abijah Huss in the presence of Simon R. Huss. That he witnessed it as a witness, being present there and he states the matters were talked over and suggestions were made by all the parties and that no reservation of the character under which this plaintiff claims title here now was talked of there.

The defendants say that from his acts and declarations there in connection with the other evidence in the case subsequently, his being away all this time and paying no taxes,

having no agent to work the coal and making no claim of the parties who were working it, constitute what the law calls an estoppel.

These facts are submitted to you to determine under all the evidence in the case whether there was an abandonment and whether his acts constitute an estoppel which would bar him or the parties claiming under him from coming in here to recover the coal from the parties who have possession of it and claim the possession of it by clear and indefeasible title.

These are facts presented to you; the plaintiff on her part argues that there are not sufficient facts in the testimony of Mr. Hoge going to show that this matter was so understood at that time. You must decide the import of his acts and declarations with all the other facts in the case; Mr. Huss' conduct since that time, through all the years intervening from the time since the land passed out of his hands by the conveyance which he made. If he stood by at the time Long deeded the property to Abijah Huss knowing that Long undertook to convey to Abijah Huss the full and absolute possession of the land without any reservation or exception and without any mention of the rights of Simon R. Huss, which had been reserved to him by virtue of this deed from him to Long, it was his duty to speak then, he would be barred or estopped now, if those facts were talked over and he understood them in that way, because you will remember at that particular time his deed was not on record; in other words, there was no constructive notice at that time by which a purchaser or purchasers might know or could find facts to put him on notice. It was his duty to speak at that time if those matters were discussed and talked of at that time. If the testimony shows that was the intention to pass the complete title over to Huss and Huss had no notice of the rights of Simon R. Huss, he should have spoken, and if his lips were sealed, Simon R. Huss and those claiming under him, would be estopped here.] [8]

Plaintiff presented these points:

1. Under all the evidence in this case the plaintiff is entitled to the land described in the writ. *Answer:* Refused. [9]

3. The defendant surface owners could acquire no title or right of possession to the coal and coal rights described in the writ by actual possession of the surface for twenty-one years,

and their mining of the coal made them from the beginning trespassers the same as though they were not owners and did not have possession of the surface, but total strangers to any part of the title to the land. *Answer:* The first part of that proposition is correct. That is, the mere possession of the surface of the land for twenty-one years without any acts of mining or without any taking of coal from under the surface would not give the party title, where there was a deed and the legal title for the coal remained in somebody else. That part of the point is correct. But we cannot affirm that point as it stands. We will have to refuse the other part of that point. [10]

4. Continuous, adverse mining of the Waynesburg or outcropping vein of coal for the statutory period of twenty-one years would give defendants no title or right of possession to the so-called Pittsburg vein or stratum of coal, or to any other stratum or vein under the surface of the land described in the writ except said Waynesburg vein. *Answer:* I do not understand that you can distinguish in that way. That clause is clear as to all coal without any specification as to any one vein and we will have to refuse that point. If the plaintiff is entitled to the coal, she is entitled to all the coal. If she is not entitled to all the coal she is not entitled to any of the coal. [11]

5. The only title and right of possession to coal underlying land described in writ claimed by William Rinehart, one of the defendants, is a verbal privilege granted to him by Simon R. Huss to mine the Waynesburg or outcropping vein, which privilege was abandoned by him in 1881, after which up until the present time he claimed under deed from Abijah Huss' heirs for said vein; and the mining of coal by said Rinehart and his employees as testified to in this case, was not adverse to said Simon R. Huss or the plaintiff, and his mining from 1881 to 1887 under the deed from Abijah Huss' heirs was not sufficient to give him any right of possession. *Answer:* It would be sufficient if the facts detailed by the defendants here are believed by you that there was an abandonment of the claim for the coal on the part of Simon R. Huss at the time Richard Long deeded this property to Abijah Huss. I don't recall very distinctly all that was read from the deposition of William Rinehart, not being able to catch all the statements, perhaps; but you will remember what his testimony was. But the point

in the case is this, if Simon R. Huss had abandoned the coal or any claim to the coal, and had acquiesced in the conveyance of Long to Abijah Huss, it would not make much difference about this arrangement with William Rinehart. [12]

6. The doctrine of abandonment has no bearing on this case as against plaintiff, as said plaintiff's title to the coal land described in writ is perfect and complete of record. *Answer :* Refused. [13]

7. That the recitals in the deed from Richard Long to Abijah Huss and in deed from said Long to Wm. P. Scott offered in evidence in this case are and were sufficient notice to grantees therein of the existence and entire contents of the deed of Simon R. Huss to Richard Long which contained an exception of the coal thereunder severing it from the surface ; and the subsequent recording of said deed of Simon R. Huss to Long was sufficient notice to all parties (including defendants) claiming under or through said Abijah Huss and Wm. P. Scott, if said Abijah Huss and Wm. P. Scott were in possession of said land described in said deeds from Long to them, at time said deed of Huss to Long (containing an exception of the coal) was recorded. *Answer :* That proposition might be correct under some circumstances, but I cannot affirm it just as it is stated there. The recital in the deed would not be very material matter if these other matters relied upon by the defendants are believed by you. If Simon R. Huss acquiesced in the conveyance or did things that estopped him there the recital in deeds subsequently would not be sufficient to put parties without knowledge of those facts on notice. But if you believe there was not sufficient testimony in that for an estoppel, that would be a point for you to consider, as to whether there was a sufficient notice in this deed by mere reference to it. What it would amount to in the way of positive evidence will be for you to say. [14]

Defendant presented these points :

1. Where an owner of land by positive act induces a party to purchase said land from a third person, and the transaction on the part of all concerned is in good faith, he is estopped and he cannot afterwards set up his title against the purchaser, or against those claiming under such purchaser. *Answer :* That proposition is affirmed. [15]

8. If the jury believe from the evidence that Simon R. Huss was present when the article of agreement between Richard Long and Abijah Huss for the sale of 149 acres of the land sold by Simon R. Huss to said Richard Long was written by John H. Hoge and acquiesced in the said sale to Abijah Huss without coal reservation or exception, except a privilege to William Inghram or William Rinehart to take coal from the banks for use on the other part of the Leonard land if said Inghram or Rinehart was entitled to any such privilege; that the deed dated April 20, 1866, from Richard Long to Abijah Huss for said 149 acres made pursuant to said article of agreement contained no coal reservation whatever but conveyed in fee simple the entire property, coal, minerals, etc., and further that the said Abijah Huss on April 21, 1866, had said deed recorded in the recorder's office of Greene county, Pa., and at once entered into full possession of the premises conveyed claiming the entire property under said article and deed including the coal and coal banks, and that he and those claiming under him have since that date held and occupied the premises as farmers usually occupy their land and have mined the coal outcropping on said premises for family use and for sale from that time to the present in an open, visible, exclusive, continuous and hostile manner without objections from anyone until the bringing of this suit, paid the taxes during the entire period upon the entire premises, including the coal; then the said Simon R. Huss and Mary Jane Huss, the plaintiff, are estopped and cannot recover any of the coal, coal banks or privilege in and under the said 149 acres of land and the verdict of the jury should be for the defendants for the coal, coal banks and other minerals in and under said 149 acres of land. *Answer:* That proposition is correct. It comes back to the facts upon which they rely, and if you find in their favor, of course you will award them a verdict. [22]

9. If the jury believe from the evidence that Simon R. Huss in about the year 1875 and just before removing from Greene county to the state of Iowa, stated to William Rinehart that he (Simon R. Huss) owned none of the Leonard land nor anything else down there except the lot now owned by John Kelly and that lot was claimed by Solomon Gordon; that since said statement was made said Simon R. Huss has paid no taxes

on the coal in and under any part of the Leonard land and has exercised no acts of ownership over said coal and coal banks, and has acquiesced in the possession of the defendants of all of the Leonard land including the coal and has acquiesced in the payment of the taxes by Richard Long and Abijah Huss and those claiming under them on the coal as well as the surface, and has suffered the said Richard Long and Abijah Huss and those claiming under them to mine coal for their own use and for sale in the market in an open, actual, visible, exclusive, continuous and hostile manner without objection until the bringing of this suit, the said Simon R. Huss and the plaintiff are estopped and cannot recover in this action any of the coal, coal banks or coal privileges in and under any of the land sold by said Simon R. Huss to Richard Long, and the verdict of the jury should be for the defendants. *Answer :* That point is correct and is affirmed. [23]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (6–15, 22, 23) above instructions, quoting them.

*Simon R. Huss,* with him *George M. Hosack, James Inghram* and *David R. Huss, Jr.,* for appellant.—A declaration by an owner disclaiming ownership so long as he does not part with his title by writings and so long as the transaction is free from fraud, cannot affect title to real estate : Keating v. Orne, 77 Pa. 89.

The court erred in instructing the jury that payment of taxes is evidence of title and possession in defendants : Hoffman v. Bell, 61 Pa. 444; Goodman v. Sanger, 85 Pa. 37; Kingsley v. Coal & Iron Co., 144 Pa. 613.

The essential elements of an estoppel in pais have been completely disregarded in the consideration of the testimony by the learned court below : Bright v. Allan, 203 Pa. 394 ; Miranville v. Silverthorn, 48 Pa. 147.

Estoppel cannot be founded on inference or argument, but must be established by evidence of the clearest and most convincing character: Field's Estate, 2 Rawle, 351; Fredenburg v. Lyon Lake Church, 37 Mich. 476; Thompson's Appeal, 126 Pa. 367.

Where there has been privity of title and possession there must be an ouster by unequivocal act: Long v. Mast, 11 Pa. 189; McCracken v. Roberts, 19 Pa. 390.

The court seems to take the view throughout the case, clearly an erroneous one, that ownership and occupancy of the surface carries with it some right to mine the coal unless prevented by the legal owner thereof. The leading case of Armstrong v. Caldwell, 53 Pa. 284, defines the respective rights of surface owners and owners of the underlying coal. To the same effect are Plummer v. Coal & Iron Co., 160 Pa. 483; Finnegan v. Stineman, 5 Pa. Superior Ct. 124; Canal Co. v. Hughes, 183 Pa. 66, and cases there cited.

A mere physical possession of one seam of coal does not of itself create a presumption of the possession of all the other seams of coal lying thereunder: Low Moor Co. v. Stanley Coal Co., 34 Law Times, 186.

Abandonment applies only to an easement or license: Beech v. Kuder, 15 Pa. Superior Ct. 89.

If a purchaser has notice of a deed in the line of his title he is charged with knowledge of all the facts it recites and is not protected from the consequences of not looking at it even by the most express representations on the part of the vendor that it contains nothing affecting the title. It was gross negligence not to look at the deed: Patman v. Harland, L. R. 17 Chancery Div. 353; Knouff v. Thompson, 16 Pa. 357; American & English Ency. of Law (2d. Ed.), vol. 23, page 508; Ogden v. Porterfield, 34 Pa. 191; Boggs v. Varner, 6 Watts & Sergeant, 469; McKee v. Perchment, 69 Pa. 342; McCandless v. Blakely, 12 W. N. C. 510; Wertheimer v. Thomas, 168 Pa. 168; 4 Kent's Commentaries, 179; Parke v. Neely, 9 W. N. C. 193; Mulliken v. Graham, 72 Pa. 484; Sugden on Vendors, vol. 2, page 775.

*A. F. Silveus*, with him *James E. Sayers*, for appellees.— Declarations against interest must be taken as true and to be construed most strongly against the declarant: Gabler's App., 5 Cent. Repr. 314; Clarke v. Vankirk, 14 S. & R. 354.

Simon R. Huss admits the coal was never assessed to him and that he never paid any taxes on it. It is admitted that coal in this section was assessed with the surface until about the year 1899, and from this it is evident that defendants and

those under whom they claim have paid the taxes: Sailor v. Hertzogg, 10 Pa. 296.

Assessment books and tax receipts cannot prove title, but they are some evidence of claim, and are more or less efficient as showing the extent of claim and possession: Irwin v. Patchen, 164 Pa. 51; Green v. Schrack, 16 Pa. Superior Ct. 26; McClure v. Jones, 121 Pa. 550; Vastbinder v. Wager, 6 Pa. 339.

Silence will postpone a title when one knowing his own right should speak out. One lead by such silence ignorantly and innocently to rest on his title, believing it secure and to expend money and make improvement without timely warning will be protected by estoppel: Chapman v. Chapman, 59 Pa. 214; Putnam v. Tyler, 117 Pa. 570; Miller's App., 84 Pa. 391; Thompson's App., 126 Pa. 367; Logan v. Gardner, 136 Pa. 588; Com. v. Moltz, 10 Pa. 527; Vanleer's App., 24 Pa. 224.

Abandonment is a question of fact to be determined by the acts and intentions of the parties: Calhoon v. Neely, 201 Pa. 97; Raush v. Miller, 24 Pa. 277.

Acts which tend to induce reliance and prevent examination of the records will create an estoppel as effectually as representations: Wynne v. Mason, 72 Miss. 424 (18 So. Repr. 422); e. g., if the owner actively encourages another to buy the property, he will be estopped from setting up his own title: Williamson v. Jones, 4 Am. & Eng. Dec. in Equity, 222, 324, and cases there cited: Rhawn v. Edge Hill Furnace Co., 201 Pa. 637; Chapman v. Chapman, 59 Pa. 214; Del. & Hudson Canal Co. v. Hughes, 183 Pa. 66; Sutton's App., 112 Pa. 598; Wahl v. Pitts. & Western Ry. Co., 158 Pa. 257; Moreland v. Frick Coke Co., 170 Pa. 33; Gillespie v. Buffalo, etc., Ry. Co., 204 Pa. 107.

OPINION BY MR. JUSTICE DEAN, December 31, 1904:

This is an ejectment which plaintiff brings to recover possession of the coal underlying 164 acres and fifty-two perches of land in Green county. Both parties trace title to the same source, one Simon R. Huss to whom a larger tract of 275 acres including the land in dispute was conveyed by deeds from the heirs of John Leonard deceased in the year 1854. These deeds from the heirs of John Leonard to Huss put in Huss the ab-

155

solute estate in the land without reservation or restriction. Then Huss on August 5, 1859, conveyed by deed duly recorded to William Ingham an undivided interest in the whole tract which whole tract afterwards by a parol partition they divided between them, Huss retaining the 164 acres and fifty-two perches under which lies the coal now in dispute. From 1859, when Huss took title, he remained in possession of his part until November 11, 1861, when he conveyed it by deed joined by his wife to Richard Long, which deed was duly recorded December 5, 1866. It was well known to Huss while he owned the land and to others, that an upper vein of coal, called the Waynesburg vein, underlaid the land. While it was suspected that the Pittsburg vein was beneath this its existence had not at that time been proven by any actual tests. In the deed from Huss to Long is this reservation : " And it is further covenanted and agreed that this deed does not convey any right title or interest to the party of the second part in coal or coal lands situated beneath the said property, but that the said parties of the first part shall still hold possession of said coal banks with the right of mining the same, and the right of way to said coal banks, the same as if this deed had never been executed, the first part has no privilege of selling coal at the banks."

This, as the learned judge of the court below correctly held, was a complete severance of the coal from the surface. While at the date of this deed 1859, the power to separate land horizontally into two or more estates by deed was not generally recognized and acted upon by the profession, although the power had long been settled in England as well as the construction to be given the instruments of severance, yet just about the date of this deed October, 1858, this court held in Caldwell v. Fulton, 31 Pa. 475 : " Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such." The tendency had been in many cases theretofore, to twist the right to the mineral into an incorporeal hereditament, a right issuing out of the land, instead of the land itself. In about a year afterwards, this case was followed by Caldwell v. Copeland, 37 Pa. 427, in which was said: " Mines are land and subject to the same laws of possession and conveyance." This has been the settled law consistently followed by us since. When then,

Huss took his deed from Leonard's heirs he took an absolute estate in fee simple in the land extending indefinitely downwards as well as upwards. When he made his deed to Long, by the reservation, he severed his estate horizontally, he did not convey the coal which he continued to hold under the Leonard deed, he did convey the surface to Long and that was his no longer; but the coal was his land thereafter just as much so as the surface was Long's land. He could no more be divested of any right or title to this substratum of land than Long could be divested of his superstratum, the surface. Notorious hostile possession kept up for twenty-one years against either would give title to an intruder; but no permissive intrusion no mere unresented occasional trespasses would affect the stability of the title of either.

These are the general principles which should have governed the court and jury in the trial of the issue in the court below. Were they adhered to? Appellant has preferred twenty-four assignments of error, many of them, in substance, to the charge of the court. We shall content ourselves with only noticing those which in our opinion are decisive of the issue. Bearing in mind then, on the general legal principles governing the rights of owners to the under stratum of coal land, Huss, when he conveyed to Long on November 11, 1861, had the undoubted title to this estate and carefully reserved it, so that it was not affected by that deed; did he afterwards, in the interval between that date and March 2, 1900, when he conveyed to this plaintiff omit to do something he ought to have done or do something he ought not to have done by which his right to possession of his land has been divested?

In their seventh written point defendants requested the court to instruct the jury that: " The occupation of real estate for twenty-one years, in an open, visible, notorious, exclusive, continuous and hostile manner creates an indefeasible title and against the holder of the legal title and against all other persons making claim thereto who are not under legal disabilities." *Answer :* Affirmed. This in the abstract was not error, but it was followed immediately by affirmative instructions on defendants' eighth point. The defendants called one John H. Hoge as a witness, a man past sixty-eight years of age and of exceedingly infirm memory, who said he had known Simon R.

Huss when he lived in Green county, but did not remember when he moved away; was acquainted with Richard Long in his lifetime; did not remember when he died; was acquainted with Abijah Huss, deceased, but did not remember when he died; whether before or after Long; he could not fix within four years the date that Long bought from Simon Huss, but knew Long sold to Abijah Huss about 149 acres of the same land. Then defendants offered to prove by the witness that he wrote an article of agreement between Long and Abijah Huss for the sale of this 149 acres; that Simon R. Huss was present and signed the agreement as a witness, yet made no objection that his reservation in the deed to Long was not kept up in Long's agreement with Abijah Huss. The witness said he did not remember any reservation such as appeared in the deed was put in the article; in fact his memory was so impaired that he remembered only that. Simon R. Huss had signed the agreement as a witness and that the parties talked about it but what was said he did not remember. The agreement itself was not produced, whether lost or destroyed by them did not appear. This eighth point asked the court to say to the jury that if Simon R. Huss was present as a witness at the execution of this agreement without objection at the absence of the reservation in his deed to Long, it would estop him and the plaintiff who claimed under him from claiming title to the coal. This point was affirmed if the jury found the facts as set out in the point. There was no evidence which warranted the jury in finding that Simon R. Huss said anything whatever at the time the agreement was signed which would in the least prejudice his title; for all that appeared his reservation in his deed may have been noted in the agreement. He said not a word to Abijah Huss to mislead him; the latter may have said to Simon then and there that he knew all about the reservation. Besides, Simon R. Huss' deed was in Long's, the vendor's, possession containing full notice to his vendee of its existence and he, Abijah, would be presumed to know this when he purchased from Long, Simon's grantee. The only testimony that is set up tending to show an estoppel, is the alleged misleading silence of Simon R. when he ought to have spoken. It is vague, so vague that it ought to have been rejected, or after it got in under objection ought to have been withdrawn by the court.

The subject of the ninth point arises out of this testimony: Simon R. Huss in 1875, just a day or two before he left Green county for Iowa, met on the public road William Rinehart, who testified that Huss said to him, " All he had left in Green county was that lot and Sol. Gordon claimed it." This was offered as also tending to show an estoppel and as show- ing an abandonment of the estate reserved in the deed to Long. This in connection with the fact that Huss had exer- cised no acts of ownership over the property during his absence in Iowa, paid no taxes on it, that the owners of the surface during the intervening years had taken out coal when they so desired, not only showed abandonment by Huss, but, accord- ing to the facts stated in the defendants' eighth point, estab- lished for defendants a title under the statute of limitations. As to the plea of the statute, no inference of abandonment can be drawn in favor of defendants from the absence of Huss in Iowa. He removed to Iowa in 1875, bought property and made his home there. It would be highly improbable, that he would at that distance give his personal attention to 164 acres of coal he owned in the state of Pennsylvania. Another landed estate, the surface, was on top of his, not any large part of the lower estate could be dug and hauled away by trespassers. His first act of ownership over it would prob- ably be just what it was here, the sale of it. There was not in all these years, so far as we can find from the evidence, a distinct act by the surface owner hostile to his title under the reservation in his deed. Farmers and others at fitful intervals went upon the land, took away some wagon loads of coal; some of these testified that they had verbal privilege from Huss to do so. The coal banks were scattered, some six or seven over the tract; no one of them was continuously operated; occasionally a surface owner or one not a surface owner dug and sold small quantities, but the quantity in no instance was large. Adverse possession of a coal estate must be actual, as distinguished from constructive. We have care- fully perused the testimony and it wholly fails to show an open, visible, notorious, exclusive and hostile occupation of the coal land for a period of twenty-one years.

As to neglect to pay taxes by the owner, that has never been held to give title to a trespasser; if there be color of title in a

hostile claimant, that fact in connection with others will aid in establishing his claim. But there was no color of title in the surface owner; his very deed under which he claimed, negatived any title to the coal. Besides, the presumption is the taxes were paid. The law authorizes the assessment and taxation of the mineral separately from the surface; the taxes were assessed against the land alone as a whole and the owners of the two estates might have adjusted with each other their respective shares; but they did not. If they did not the county officers neglected their duty in not separating the assessment and collection of the taxes. Evidence against objection of plaintiff was admitted, that in 1886 the land was sold at sheriff's sale on an execution against William Wallace a then owner of the surface; that neither Huss nor anyone for him appeared at the sale or gave notice to bidders that he was the owner of the reserved coal. Simon R. Huss the owner testified by deposition that he never had abandoned the coal land reserved, that he took out coal from the land for a long time after he had sold the surface and nobody ever made any objection. A careful comparison of the testimony of defendants' numerous witnesses with Huss' own testimony really shows no contradiction. The substance of all the testimony of all defendants' witnesses as to the fact of abandonment may be summed up in the answer of William Rinehart to the question as to whether the owners of the land operated the mines and sold the coal; the answer was: "The whole country hauled coal away from there in the fall."

And this was the nature of the trespass: the vein was a small one near the surface not averaging over two feet in height; the mining in all the drifts was only a few feet from daylight; the coal was dug, shoveled on a wheelbarrow and loaded on a common wagon by the farmers and those in the neighborhood, who in the fall made full provision for the winter. There was no persistent continuence in the mining business at a single one of the several shallow banks; the owner of the surface exercised no exclusive ownership over the mining; not a single mine rail was laid, not a single mine car put in any bank. To hold this adverse is a perversion of every definition of adverse possession such as is necessary to give title to a trespasser under the statute of limitations. The

best that can be said of it is, that at intervals during the year
it was an open, visible trespass; and this was not exclusively
confined only to the owner of the surface.   It was not a con-
tinuous possession by even him for there was no possession of
the coal during the summer months.   There was, so far as
appears, no really hostile possession by the owner of the sur-
face under a defiant claim of right.   Such adverse ownership
as this would not have divested the real owner whose title
was of-public record if the periodical trespass had run over a
century.   We are of opinion the learned trial judge erred in
submitting this evidence to the jury and instructing them that
if they believed it, it showed abandonment or that it sustained
the plea of the statute.   But under the verdict, which is a gen-
eral one, it divests the plaintiff of all the coal under the surface
on that tract.   Adjacent explorations have made it probable
that under this Waynesburg seam is the Pittsburg seam, a
much more valuable one.   By the reservation Huss claimed
title to all the coal and coal banks beneath the property; explo-
rations long within the statutory period have pretty certainly
demonstrated the existence of the Pittsburg seam; Huss when
he made his reservation did not probably know of this seam.
There is no evidence that even the scrambling possession of
defendants touched this coal; even if the instructions had
been correct as to the Waynesburg seam, the evidence wholly
fails to sustain the verdict as to the Pittsburg seam.

But this evidence of abandonment and hostile possession
was submitted to the jury under the seventh, eighth and ninth
points along with the testimony claimed to show an estoppel
by matter in pais.   It is an established legal maxim that: "He
that does not speak when he ought to speak will not be heard
when he ought to keep silent."   We have already spoken of
Hoge's testimony as to what took place when an agreement
was made between Long, Simon R. Huss' vendee, and Abijah
Huss the vendee of Long.   It was entirely too vague; the jury
could not find from it as a fact, that Simon did not then speak
of his reservation or that Abijah did not then know of it.   But
defendants rely further upon the testimony of William Rine-
hart of Simon R. Huss's declaration to him, as showing an
estoppel.   These are Rinehart's words: "We were down in
the road and were talking a day or two before he went West,

along by the five-acre lot, and he said that all he had left in Green county was that lot and Solomon Gordon claimed it." Rinehart the witness, five years afterwards purchased from the fourth vendee from Huss about seventeen acres of the coal reserved. It is claimed that this declaration estops Huss or his vendee from claiming this coal. It is argued that then was Huss' time to speak, and as he did not do so he and his vendee must now keep silent. It will be noticed that this was a casual conversation on the road; Rinehart did not say to Huss he was about to buy part of the land he had sold to Long, in fact he did not purchase it until five years afterwards, long after Huss' reservation was a public record. What duty on Huss was there to speak to Rinehart? Was he bound to tell him that he conveyed the 164 acres to Long but had reserved the coal? At that time it was no concern of Rinehart's. When it did concern him years afterwards there was Huss' deed of record which in unmistakable terms proclaimed he did own the coal. " Silence works no estoppel unless it misleads another to his injury: " Hill v. Epley, 31 Pa. 331. Besides, the words do not import a disclaimer of ownership of the coal; they were talking along by the five-acre lot, five acres of surface which Gordon claimed; he may well have been referring to land which was visible, not coal under the surface. No estoppel is to be raised from inference or argument. To make these words an estoppel we must resort to a by no means obvious inference: Com. v. Moltz, 10 Pa. 527; Thompson's Appeal, 126 Pa. 367. We are of the opinion that this testimony in no fair view creates or even tends to prove an estoppel.

The plaintiff has a clear and most undoubted legal title to her estate; for many years it has been spread upon a public record to be read and seen by all who had any interest in knowing what it was. It would be a gross wrong to her to allow it to be destroyed by insufficient evidence. To preserve such a title the law does not require physical possession by the owner, that he should live in a coal mine. He has that constructive possession which the law declares his deed gives him and that under the facts of the case is enough. The judgment is reversed.