## McBeth et al. *v.* Wetnight.

### [No. 8,349.   Filed October 9, 1914.]

1. Husband and Wife.—*Conveyance of Realty held by Wife in Virtue of Prior Marriage.—Validity.*—A conveyance by husband and wife of realty acquired by the wife by virtue of a previous marriage, made at a time when children of her former marriage were living, was within the inhibition of §3015 Burns 1914, §2484 R. S. 1881, and hence void.   p. 51.

2. Adverse Possession.—*Limitation of Actions.—Color of Title.*—A deed of land acquired by a widow in virtue of her marriage with her deceased husband, made during her subsequent coverture and while children of her former marriage were living, though void, afforded to the grantees color of title, and, as against one claiming under a valid deed made by such widow following the death of her second husband, the statute of limitations began to run from the time adverse possession was taken thereunder.   p. 52.

3. Adverse Possession.—*Elements.*—Possession, to support a claim of title by adverse possession, must be hostile and under a claim of right, and must be actual, open and notorious, exclusive and continuous.   p. 52.

4. Mines and Minerals.—*Severance of Surface and Mineral Rights.—Presumptions.*—A conveyance of underlying mineral with the right of removal effects a severance of the surface and mineral rights and makes them distinct corporeal hereditaments, and, after such severance, the presumption that the possessor of the surface has the possession of what is below does not exist.   p. 53.

5. Mines and Minerals.—*Severance of Surface and Mineral Rights.—Adverse Possession.*—Where there has been a severance of the right to the surface from the right to the mineral underneath, adverse possession of the surface does not include possession of the mineral, but in such case to sustain a claim of title to the mineral by adverse possession the claimant must prove possession of the mineral as such, independent of the surface. p. 53.

6. Mines and Minerals.—*Severance of Surface and Mineral Rights.—Nonusage.*—Where there has been a severance of the mineral from the surface rights, the owner of the mineral does not lose his right or his possession by mere nonusage of the mineral.   p. 54.

7. Adverse Possession.—*Color of Title.—Extent of Rights Acquired.*—Color of title is not of itself evidence of adverse possession, and amounts to nothing unless connected with an adverse possession, but, where one enters upon land under color of title, he is presumed to have entered in accordance therewith,

and his actual possession of the portion of the property constructively extends to the boundaries defined by his color of title, excepting in so far as the land so included is in the adverse possession of another.    p. 54.

8. ADVERSE POSSESSION.—*Color of Title.*—A possession without color of title may ripen into title to the land actually occupied, while with color it may ripen into title to all the land described in the color of title, but in either case the essential elements of adverse possession are the same.    p. 54.

9. MINES AND MINERALS.—*Coal Lands.*—*Severance of Surface and Mineral Rights.*—*Adverse Possession.*—Where there had been a severance between the surface of certain land and the underlying coal, and an actual possession of the coal had been taken under a deed, which because of invalidity, merely afforded color of title, but before the expiration of the period essential to complete title by adverse possession the mine was destroyed by fire, and thereafter no overt act or conduct evidencing actual possession, control or dominion over the coal was exercised by claimants, there was a cessation of their possession so as to prevent a ripening of the title by adverse possession, although they continued to claim title thereto and were generally reputed to be the owners of such coal.    pp. 55, 56, 57.

10. ADVERSE POSSESSION.—*Continuity.*—In addition to all other requisites, adverse possession, to ripen into title, must be continuous and uninterrupted for the full statutory period.    p. 55.

11. MINES AND MINERALS.—*Coal Mines.*—*Adverse Possession.*—While actual possession of a coal right does not require that one shall live in the coal mine, and is not to be confused with residence, such possession is not sufficiently established so as to show title by adverse possession under color of title by mere proof of the general reputation of ownership.    p. 57.

12. APPEAL.—*Evidence.*—*Sufficiency.*—The decision of the trial court, if supported by some evidence, will not be disturbed on the objection that the evidence is insufficient.    p. 58.

From Clay Circuit Court; *Paul N. Bogart,* Special Judge.

Action by Harry C. Wetnight against Sarah J. McBeth and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*A. W. Knight* and *Sullivan & Knight,* for appellants.
*Luther & Luther,* for appellee.

HOTTEL, J.—This is an action brought by appellee to quiet title to certain real estate. Appellants claimed to be the

owners of the coal underneath the surface of such real estate and filed a cross-complaint against appellee to quiet their title to all of said real estate, "except the surface thereof". There was a trial by the court and a request for a special finding of facts. The finding of facts and conclusions of law were in appellee's favor on his complaint and against appellants on their cross-complaint. A motion for a new trial was overruled, and judgment rendered for appellee in accordance with the finding and conclusions of law.

The facts as shown by the special findings are in brief as follows: Henry N. Brann died intestate on August 29, 1872, the owner in fee simple of certain real estate including that described in the complaint. Brann left surviving him his widow, Maria Brann, and seven children. On October 18, 1877, such widow and children executed a mineral lease on said real estate to William M. Morris for a term of twenty-one years with the right of the lessees to enter thereon and dig and mine coal therefrom, which lease was, on May 14, 1878, assigned to certain other persons, who entered into possession of the coal under said real estate, pursuant to the lease and mined and removed coal therefrom until about the year 1888, when the shaft at their mine was destroyed by fire. The lease and assignments were duly recorded in the office of the recorder of Clay County. At the March term of the Clay Circuit Court, 1878, a partition of the real estate of said decedent, Brann, was had between his widow and her said children whereby the twenty-five acres in question was set off to said widow. A transcript of this partition proceedings was duly recorded. On March 26, 1881, Maria Brann was married to Robert Gibbons. On June 12, 1884, Maria (Brann) Gibbons and her husband Robert Gibbons conveyed to William M. and Sarah J. Ridpath, husband and wife, by warranty deed, the coal under the said twenty-five acres, which deed was duly recorded, and thereupon said Ridpaths together entered into actual possession

of the said coal and coal vein being operated on said land
by the holders of said lease hereinbefore referred to, and
they continued to exercise dominion over said coal and coal
vein and received the royalties on all coal mined therefrom
by such leaseholders until the mine was destroyed by fire
in 1888.   At the time of executing said deed by said Gibbons
and Gibbons, there were children alive, the issue of the
marriage of Henry N. Brann and Maria Brann.   Robert
Gibbons died October 17, 1891.   On April 20, 1894, Maria
Gibbons a widow, deeded to Daniel K. and Arminda Brann,
husband and wife, by warranty deed all of said twenty-five
acres except four and one-half acres, reserving to the grantor
a life estate in said tract, which twenty and one-half
acres was, on April 18, 1899, through successive transfers
deeded to appellee, and which transfers are of record.   Maria
Gibbons died October 9, 1896.   On August 11, 1902, W. M.
Ridpath alone executed his release and quitclaim deed to
Robert A. McBeth for all coal and minerals under the said
twenty-five acres, and on June 21, 1905, Sarah J. Ridpath
alone executed her release and quitclaim deed to said McBeth
for such coal and minerals.   At the time of making each of
these last mentioned deeds, the said Ridpaths were husband
and wife and so continued to be husband and wife until the
time of this trial.   Robert A. McBeth died intestate, leav-
ing surviving him a widow Sarah J. McBeth and four chil-
dren.   The children of Robert A. McBeth, except Mary C.
conveyed to their mother all their interest in the coal on
said real estate held by their father, Robert J., and said
mother and daughter, the defendants herein, are claiming
and asserting an interest in said real estate adverse to plain-
tiff.   Shortly after the destruction of said mine by fire,
the said leaseholders thereof abandoned their lease and said
Ridpaths abandoned possession of said coal and coal vein
and neither said William M. nor Sarah J. Ridpath have at
any time since said abandonment held possession of said coal
and coal vein.   Robert A. McBeth never at any time during

his lifetime had possession of said coal or any part thereof, nor has his wife or children had possession thereof since his death. Subsequent to the burning of said mine and prior to the date of the execution of said deed from William M. Ridpath to Robert A. McBeth, on August 11, 1902, said Ridpath, either by himself or by agent on numerous occasions attempted and offered to sell and lease the coal under the land described in plaintiff's complaint under a claim of ownership thereof. Prior to and at the time of the execution of the deed from William M. Ridpath to Robert A. McBeth, it was generally and notoriously understood in the neighborhood where the land was located that said Ridpath was the owner of said coal. No coal has been mined from the land in question since the burning of said mine. The plaintiff, on receiving his deed for said real estate, to wit, on April 18, 1899, entered upon and took possession of said real estate and has continued in possession thereof to the present date, except the surface of ten acres deeded to other parties, and plaintiff is now the owner in fee simple of the real estate in question, except the surface of said ten acres.

It will be observed from the above finding that the sole record evidence of title in appellant to the real estate in question must be based on the deed made in 1884 by Maria (Brann) Gibbons and her husband Robert Gibbons. This real estate was held by Mrs. Gibbons by virtue of her previous marriage with Henry N. Brann, and at the time she and her subsequent husband attempted to convey the same, there were children alive issue of her former marriage. Such conveyance was inhibited by statute (§3015 Burns 1914, §2484 R. S. 1881), and hence was void. That appellants recognize the force of this statute and its influence on the question presented by the appeal is evidenced by the admission in their brief that "the question involved in this suit * * * relates solely to whether or not the title of these appellants to the coal underlying the surface of the land in question had become vested in

them by *adverse possession* during a period of over twenty years prior to the filing by appellee of the action to quiet title to said land, which suit was filed on March 2, 1910.''

Appellee insists, in effect, that under this admission, there must be an affirmance of the judgment below because the finding shows that Mrs. (Brann) Gibbons did not die until 1896, and that her children by her marriage with Henry Brann had no interest in said estate until her death, when they took such real estate as the heirs of such deceased husband, and that the statute of limitations did not begin to run until that time. In support of this contention appellee relies on the cases of *Irey* v. *Mater* (1893), 134 Ind. 238, 33 N. E. 1018; and *Haskett* v. *Maxey* (1893), 134 Ind. 182, 33 N. E. 358, 19 L. R. A. 379. These authorities might be of controlling influence if this suit were one by the surviving children or their descendants, issue of the marriage of Henry N. Brann and Maria Brann, or if appellee claimed through a deed from such children or their descendants. Appellee's title, however, rests on a deed from Mrs. (Brann) Gibbons, and not on a deed from her children by such former marriage. The deed of Mrs. Gibbons, through which appellee claims, was made after the death of her second husband and when she was a *feme sole,* and hence was not in violation of §3015, *supra,* and was a valid conveyance; but, such being the source of appellee's title, an adverse possession taken and *continued* by another under a deed from such grantor conveying color of title would operate against appellee. That the deed of Mrs. Gibbons and her husband to appellants' grantors, though void, was sufficient to give color of title, and set in motion the statute of limitations predicated on a claim of adverse possession made by her grantee has been expressly held by the Supreme Court in the case of *Irey* v. *Markey* (1892), 132 Ind. 546, 32 N. E. 309.

Five elements are essential to the support of a title by adverse possession, viz., (1) it must be hostile and under claim of right; (2) it must be *actual;* (3) it must be open

and notorious; (4) it must be *exclusive;* and (5) it

3. must be *continuous.* It is insisted by appellants in effect that the findings of fact in this case show each of these elements; that it shows that there was a severance of the right to the surface of the real estate in question from the right to the underlying coal; that appellants' grantors under a deed conveying color of title to such underlying coal took actual possession and control of the mine then being operated on such real estate; that such possession was constructive possession of the entire coal under the real estate, covered by their deed, and that such possession and control was under a claim of right, open and notorious and continued the full term of twenty years, and that the finding that after the fire there was an abandonment of the mine, that had been operated on said real estate, was not sufficient to overcome such other findings.

It is no doubt true, as appellants contend that "a conveyance of the underlying coal with the privilege of its removal from under the land of the grantor 'effects

4. a severance of the right to the surface from the right to the underlying coal, and makes them distinct corporeal hereditaments. The presumption that the party having the possession of the surface has the possession of the subsoil also, does not exist when these rights are severed.' " See, also, *Armstrong* v. *Caldwell* (1866), 53 Pa. St. 284; *Wallace* v. *Elm Grove Coal Co.* (1905), 58 W. Va. 449, 453, 52 S. E. 485, 6 Ann. Cas. 140; *Caldwell* v. *Copeland* (1860),

37 Pa. St. 427, 78 Am. Dec. 436. And, where there

5. has been such a severance of the surface from the mineral underneath, the possession of the surface for more than twenty years does not carry with it the possession of such minerals beneath; but where the owner of the surface in such a case seeks to establish title to the minerals underneath by adverse possession as against one holding the legal title to the mineral, it is incumbent on such owner of the surface to prove possession of the minerals as such,

independent of the surface, otherwise his claim of adverse possession will fail. The owner of the mineral in such a case does not lose his right or his possession by mere nonusage of the mineral. *Huss* v. *Jacobs* (1904), 210 Pa. St. 145, 153, 59 Atl. 991, and cases cited, *supra.* It is also true, that "One who enters upon land under color of title is presumed to have entered in accordance therewith; and, therefore, his actual possession of a portion of the property will, by presumption of law, be constructively extended to the boundaries defined by his color of title, excepting in so far as the land so included is in the adverse possession of another. Beyond such boundaries, however, his possession does not go. But, while color of title draws the constructive possession of the whole premises to the actual possession of a part only, and is evidence of the nature of the entry and of the extent and boundaries of the possession claimed, it is not of itself, evidence of adverse possession, nor does it necessarily follow that adverse possession, can be proved by less evidence when the entry is under color of title than when it is not. *Moreover, color of title without adverse possession thereunder, does not operate to give constructive possession. It amounts to nothing, unless connected with an adverse possession."* (Our italics). 1 R. C. L. 727.

The difference in the extent of the possession necessary where there is and where there is not color of title in order that such possession may ripen into title is as follows, viz., "A possession without 'color' may ripen into title to the land actually occupied, but with 'color' it may ripen into title not only to the land actually occupied, but to all the land described in the 'color' of title. In either case the essential elements of adverse possession remain the same. Where possession has been taken under color of title the law operating on the 'color' puts the claimant in constructive possession of that part of the land called for by the 'color', although it is not in his

actual possession. In the case of an entry by a mere trespasser, the rule of constructive possession has nothing on which to operate, therefore, the claimant's occupation must be confined to his actual possession; the acts of wrongdoers, especially where they seek to profit by them, being construed strictly.'' 1 R. C. L. 728. Under these authorities it is clear that though there be color of title on which a claim to title on the ground of adverse possession is based, yet there must be actual possession of some part of the real estate described in the instrument conveying such color of title before such claim can be sustained, and where such actual possession of a part is shown it will constructively extend to the entire tract covered by the instrument giving color of title.

The facts found by the court show that the appellants' grantors, after receiving their deed conveying color of title to the real estate in question, took actual possession thereunder of the mine being operated on said real estate. This possession while it continued extended to the coal of the entire tract conveyed by such deed, and had it continued the required period would have developed into an absolute title to the coal under such tract. The findings, however, show that this actual possession only continued until the fire, and that the mine on such real estate was then abandoned and that thereafter, neither the appellants nor any of their grantors had any possession of any part of said real estate.

''In addition to the necessity of having an open, notorious, exclusive, and hostile, possession, as stated heretofore, it is also essential that such possession, in order that it may ripen into title, should be shown to be continuous and uninterrupted for the full statutory period. The moment the possession is broken it ceases to be effectual because, as soon and as often as a break occurs, the law restores the constructive possession of the owner. And one. whose title to the property has been divested by the adverse

possession of another stands on the same footing as do other persons in this respect, that is, should he attempt to regain the land by adverse possession, he can do so only by an occupancy for the full statutory period." 1 R. C. L. 716.

Appellants, however, insist that the findings show that after such actual possession by appellants' grantors, they and appellants continuously claimed title to the coal under said real estate; that their claim was open and notorious and that appellants and their grantors were, respectively, generally understood to be, and in the neighborhood of said real estate were generally reputed to be, the owners of the coal under said land. It is true, as appellants contend, and as before indicated in this opinion, that *where there has been an actual valid severance by deed or by adverse possession of the title to the surface and the title to the mineral underneath a tract of real estate* a mere cessation of the working of, or operation of a mine on such real estate by the owner thereof or mere nonusage of the mineral will not deprive such owner of the mineral of his right thereto, or of his possession thereof. In such case there must be more than an abandonment or nonusage by the owner of the particular mine, there must be an abandonment or a disseizen of his possession of the mineral right before the owner of the surface can ripen a title to such mineral by adverse possession. If the findings showed that appellee's claim of title to the mineral in question rested on adverse possession and that appellants' title thereto rested on a valid deed, or had been perfected by the necessary continued adverse possession for the statutory period of twenty years, the mere abandonment of the mine after the fire and its nonusage thereafter might not be sufficient to deprive appellants of the constructive possession of the mineral which such title would give them and the authorities cited by appellants would be controlling. The facts found by the court, however, present a very different case. They show that appellants' record title under which they took possession was

void, and that the color of title thus conveyed was never ripened into a perfect title by an actual possession of said minerals, or any part thereof, for the full period of twenty years, but that long before such period expired the actual possession once taken was abandoned and there was no actual possession of such mineral or any part thereof thereafter.

We are aware, as appellants contend, that actual possession of a coal right does not require that one shall live in the coal mine. On the contrary, possession is not to be confused with residence. "The claimant's possession and its continuity, will be sufficient if by his acts and conduct it is apparent to men of ordinary prudence that he is asserting and exercising ownership over the property; and for this purpose it is necessary to take into consideration the nature, character, and location of the property, and the uses for which it is fitted, or to which it has been put." 1 R. C. L. 717. See, also, *Moore* v. *Hinkle* (1898), 151 Ind. 343, 50 N. E. 822. It has been expressly held by the courts of this State that the general reputation of ownership is not sufficient to show title by adverse possession under color of title. *City of Logansport* v. *Dunn* (1856), 8 Ind. 378.

Appellants have not cited us to any authority, nor do we believe any can be found, which holds that a mere claim of ownership, and offers to sell the mineral under a particular tract of real estate, as found by the court in this case, in the absence of any overt act or conduct evidencing any actual possession, control or dominion over such mineral, are sufficient to show the adverse possession under color of title necessary under the law to perfect title by such possession. We certainly would not be justified in treating such facts as controlling where as in this case there is an express finding to the effect, that after the mine was destroyed by fire it was abandoned by its lessees and that appellants' grantors then "*abandoned possession*

*of said coal and coal vein,"* and that neither they nor their *grantors, appellants included, have since had or held possession of such coal or any part thereof.* It is insisted, however, by appellants that this part of the finding is not sustained by the evidence. We cannot agree with this contention. There was evidence showing, or tending to show, that before the destruction of said mine by fire the mine supports were being taken out preparatory to abandoning it and that after the fire appellants' grantors, the Ridpaths, moved to another state; that thereafter neither they nor any of their grantees, nor any one, for them or either of them, were ever in actual possession of said coal or ever exercised any actual authority, dominion or control over said mineral or any part thereof, and never paid any taxes thereon. There was at least some evidence tending to support the decision of the trial court, and this, under the repeated authorities of this and the Supreme Court, is sufficient to prevent a reversal of the judgment on the ground of the insufficiency of the evidence.

Judgment affirmed.

NOTE.—Reported in 106 N. E. 407. As to adverse possession and color of title sufficient to sustain it, see 14 Am. Dec. 580; 88 Am. St. 701. As to the necessity of color of title when not expressly made a condition by statute to found title by adverse possession, see 15 L. R. A. (N. S.) 1178; 5 L. Ed. U. S. 398; 40 L. Ed. U. S. 215. As to the acquisition of title to mines by adverse possession, see 6 Ann. Cas. 142; Ann. Cas. 1912 D 1199. See, also, under (2) 1 Cyc. 1094; Adverse Possession, 2 C. J. §366; (3) 1 Cyc. 981; Adverse Possession 2 C. J. §1; (4) 27 Cyc. 682; (5, 6) 27 Cyc. 687; (7, 8) 1 Cyc. 1084; Adverse Possession 2 C. J. §§331, 332; (9) 1 Cyc. 1012; Adverse Possession 2 C. J. §134; (10) 1 Cyc. 1000; Adverse Possession 2 C. J. §64; (11) 1 Cyc. 1151; Adverse Possession 2 C. J. §616; (12) 3 Cyc. 360.