## MISSOURI PAC. R. CO. v. BARTLETT.

### No. 10263.

Circuit Court of Appeals, Eighth Circuit.

July 22, 1935.

William L. Curtis and Thomas B. Pryor, both of Fort Smith, Ark., for appellant.

James M. Hill, Henry L. Fitzhugh, and John Brizzolara, all of Fort Smith, Ark., and Jesse Reynolds, of Clarksville, Ark., for appellee.

Before STONE, GARDNER, and FARIS, Circuit Judges.

FARIS, Circuit Judge.

Appellee brought this action in equity to remove a cloud on his title to certain segregated mineral rights in or underlying two parcels of land situate in Johnson county, Ark. The case was begun on February 27, 1931, in a chancery court of the state; was removed thence, by appellant in the conventional way, to the District Court of the United States for the Western District of Arkansas; wherein on a trial, appellant, being cast, appealed. Pending the action in the District Court, appellant began a proceeding under the provisions of section 205, title 11, USCA, wherein L. W. Bald-

win and Guy A. Thompson were duly appointed trustees, and they thereupon caused themselves to be made parties defendant herein, and entered their appearances in the case as such.

The facts are relatively few and fairly simple; the law is somewhat troublesome, but only because it involves numerous local statutes. The lands, to which the mineral rights in dispute are appurtenant, were long owned by the St. Louis Iron Mountain & Southern Railway Company, which sold them, prior to the arising of this controversy to some third party, whose status and identity are not here pertinent. In the above sale, the mineral rights were reserved to the grantor. Later, the appellant acquired all of the property and assets of the St. Louis Iron Mountain & Southern Railway Company, including, as is not disputed, these reserved mineral rights. These rights were, it is alleged by appellee, separately assessed for taxes by the state of Arkansas from, including, and after, the year 1907. In 1911, the taxes thereon, for the year 1910, not having been paid by appellant, or by any one for it, the segregated mineral rights were forfeited to the state of Arkansas for nonpayment of the taxes for the year 1910, or, to be more accurate, since there were no bidders, the mineral rights were sold to the state, as by local statute permitted.

In November, 1921, the state of Arkansas sold and conveyed, through its Commissioner of State Lands, these mineral rights to appellee and one Patterson whose interest, it is found by the trial court, later passed to appellee. The conveyance from the Commissioner to appellee and Patterson was put on record promptly.

In 1930, the appellant brought an action in mandamus, against the then Commissioner of State Lands of the State of Arkansas, to compel such Commissioner to convey these mineral rights to it, on its application to purchase them and its tender of the purchase price. Appellant prevailed in this action, *to which, however, appellee was not a party,* and pursuant to the judgment of the state court rendered in the above action, the Commissioner of State Lands on the 25th day of August, 1930, conveyed these mineral rights to appellant. This conveyance to appellant, and which it offered on the trial, among other things recites that the mineral rights in controversy, *"were forfeited and sold to the State of Arkansas at a County Tax Collector's sale*

*for non-payment of taxes due thereon for the year set forth below, towit, mineral title only, in or under the following lands"* (describing lands in or under which such rights are situate, and being same in dispute); *year for which forfeited, 1910."* (Italics supplied.)

The mineral rights here involved have not been at all developed or worked by any one; certainly, not by either of the parties to this action. Appellee offered evidence tending to prove that he had paid taxes on these segregated rights for the years 1922, 1923, 1924, 1925, 1926, and 1927. The taxes for the years 1928, 1929, and 1930 were not paid when due, and the mineral rights in the land were again forfeited to the state; but appellee offered, for the three years mentioned, redemption certificates issued to him in 1931, pursuant to the local statute.

The appellant relies on numerous alleged errors, and discusses in its brief some ten of these. We take it, since this case sounds in equity the sole duty of this court is to ascertain whether the decree rendered by the court nisi was on the record right or wrong. If there was offered on the trial incompetent and inadmissible evidence, it will be deemed, absent at least an affirmative showing in the findings of fact to the contrary, that the trial court put no reliance on such evidence. In short, such incompetent and inadmissible evidence will be disregarded, and then the record will be examined in order to determine whether there remains enough good evidence to sustain the decree of the chancellor. If there shall be found such, then the decree will be upheld; but if not, then of course it must be reversed.

All of the ten alleged errors relied on by appellant for reversal may fairly be boiled down into the below points: (a) That appellee's deed is void, for that in 1921, when the Commissioner sold these segregated mineral rights to appellee and Patterson, no law was in existence in Arkansas, giving such Commissioner any authority, either to sell these rights at private sale, or to make a deed of conveyance therefor; (b) that it was not till 1929 that the Commissioner was given, by a statute passed in that year, authority so to sell and convey and that appellant purchased thereunder; (c) that there was no competent evidence in the record showing that the Commissioner of State Lands of Arkansas had ever certified the segregated mineral

rights to the county clerk for taxation, and that for divers reasons, the assessment, forfeiture for nonpayment of taxes, and sale of these mineral rights for taxes, and the purchase thereof by the state were void for errors and omissions; and (d) that the alleged payment by appellee of the taxes on these mineral rights for seven years did not, under the law and the facts, serve to vest title therein in appellee, and so such fact of payment, even if true, constituted no defense as against the title asserted by appellant.

As forecast, appellant contends, and appellee seems tacitly to concede, that if under local statutes there was not any power vested in the Commissioner of State Lands of the State of Arkansas, either to sell segregated mineral rights at private sale, or to make a deed of conveyance therefor, then the conveyance to appellee and Patterson is void. In the view we are constrained to take of this case, this is the chief and decisive question in it. That there had been prior to the alleged separate assessment for taxes, for the year 1910, a segregation of the mineral rights in dispute, from the surface, perforce a deed from the predecessor of appellant, reserving the mineral rights, is a stipulated fact. In such case, a statute of Arkansas, in force when the assessment here involved was made, provided thus: "When the mineral rights in any land shall, by conveyance or otherwise, be held by one or more persons, and the fee simple in the land by one or more other persons, it shall be the duty of the assessor when advised of the fact, either by personal notice, or by recording of the deeds in the office of the recorder of the county, to assess the mineral rights in said lands separate from the general property therein. And in such case a sale of the mineral rights for nonpayment of taxes shall not affect the title to the land itself, nor shall a sale of the land for nonpayment of taxes affect the title to the mineral rights." Act March 1, 1897, p. 38; section 9856, C. & M. Dig. Arkansas 1921.

Another statute of Arkansas, likewise in force when the alleged sale and conveyance were made to appellee and Patterson, very clearly provides for the sale at private sale, and for the conveyance by the Commissioner, of "all lands forfeited to the State for the nonpayment of taxes." This section reads as follows: "All lands forfeited to the State for the nonpayment of taxes, after being duly certified to the Commissioner, as now required by law, shall be subject to private sale at one dollar and twenty-five cents per acre, sixty per cent. of which may be paid with the scrip of the county in which the land is situated, and the other forty per cent. with State scrip, certificates of indebtedness, or lawful money of the United States, and the Commissioner immediately after the filing in his office of the receipt of the Treasurer of State, showing that the full amount of the purchase money for such lands has been paid, shall execute to the purchaser, his heirs and assigns, a deed on behalf of the State to such lands." Act April 1, 1887, p. 217, § 3; section 6661, C. & M. Dig. Arkansas 1921.

There is no doubt upon the record that appellee and Patterson paid the sum of $1.25 per acre, plus a fee for the execution of the deed for the mineral rights or title, here in dispute, and that the Commissioner made and delivered to them a conveyance therefor, which, being duly recorded, gave constructive notice thereof to appellant, when it took a like conveyance from the Commissioner in 1930. But as forecast, among other things urged, appellant contends that it was not till the act of 1929 was passed by the Legislature of Arkansas (Crawford & Moses' Dig. Supp. 1931, § 6596a et seq.), that the Commissioner was given power to sell at private sale, and the right to convey mineral rights, which had been segregated, and sold to the state on forfeiture for nonpayment of taxes. The act above mentioned did, in section 6596c thereof, by plain reference to other sections of the amendatory act, provide specifically for private sale of mineral rights when segregated and sold to the state for taxes, and for the conveyance thereof by the Commissioner after such sale. But the act of 1929 did more than this; it so far lowered the price at which lands forfeited to the state for nonpayment of taxes could be sold, as that appellant was enabled to buy 160 acres of mineral rights for $13.41, whereas 140 acres of such rights cost appellee $151; it added to former section 9856, supra, segregated "timber rights," and in other parts of the act, "oil, gas or other mineral rights" specifically appear, as additions or changes. The main purpose of the act seems to have been to put back on the tax books, by sales to private persons, at a merely nominal price, large bodies of forfeited lands held by the state, and which the state was not able to sell at $1.25 per

acre, and on which it could collect no taxes. This act also provided as to lands, town lots, mineral and other similar rights, that they should be sold merely for the taxes, penalties and costs against them. At the time of the passage of the amendatory act of 1929, there had been no construction by the courts of Arkansas of section 9792, C. & M. Digest, Statutes of Arkansas 1921, which required a definition of the words "real property and lands," as found in the above section. Nor has there been up to the present. For counsel have found none, nor have we found any.

Section 9792, supra, so far as pertinent reads thus: "The term 'real property and lands,' wherever used in this act, shall be held to mean and include not only the land itself, whether laid out in town lots or otherwise, with all things therein contained, but also all buildings, structures and improvements, and other fixtures of whatever kind thereon, and all rights and privileges belonging or in anywise appertaining thereto."

■ We are unable to avoid the conclusion that section 9792, supra, by the use of the term "real property and lands" includes segregated mineral rights, for all of the purposes of sale and conveyance on forfeiture to the state for nonpayment of taxes. If this is so, then section 6661, supra, applies precisely the identical procedure touching sale and conveyance of mineral rights, as is therein provided for lands, or the land surface. Section 6661, supra, undoubtedly gave authority to the Commissioner to sell at private sale and to convey lands forfeited to the state.

Section 9735, C. & M. Digest, Statutes of Arkansas, defines "real property," and the statutory definition reads thus: "The words 'real property' mean lands, tenements and hereditaments." So the sole question is: Does land include the minerals in, on, and under the land? We are of opinion it does, within the terms of statutes relating to taxation, such as is section 9792 supra. The cases and authorities seem to bear out this view. It will be noted that by the above section, real property and lands for purposes of taxation (and matters germane, we think) include "all rights and privileges belonging or in anywise appertaining thereto"; that is, to real property and lands. This construction is borne out, we think, by the great weight of authority. 40 C. J. 903, and cases cited; Huss v.

Jacobs, 210 Pa. 145, 59 A. 991; Steinman v. Vicars, 99 Va. 595, 39 S. E. 227; Gulf, etc., Co. v. Alabama, etc., Co., 145 Ala. 228, 40 So. 397; Haskell v. Sutton, 53 W. Va. 206, 44 S. E. 533; Swayne v. Lone Acre Oil Co., 98 Tex. 597, 86 S. W. 740, 69 L. R. A. 986; Isom v. Rex Crude Oil Co., 147 Cal. 659, 82 P. 317; Words and Phrases, passim.

In 40 C. J. 903, it is said: "A mine is land, as that term is used in the law of real property, and therefore a mine, as distinct from the surface, is subject to the same rights of ownership, possession and conveyance as other lands, and such rights as are fixed by the law of property can not be divested by any mere local custom or regulation; * * * minerals in place, that is, lying beneath the surface, or on the surface, unworked, are a part of, and constitute an interest in real estate, with all the attributes and incidents peculiar to the ownership of land."

In the case of Huss v. Jacobs, supra, it is said "land includes coal and minerals in place," and says the case of Steinman v. Vicars, supra, "under a statute the word 'land,' included lands * * * and all rights thereto and interests therein, and a conveyance of land carried coal beneath the surface." We are of opinion, we repeat, that the provisions of section 6661, supra, applied to the sale and conveyance of mineral rights, as well as to the land surface. It seems hypercritical to say that the mere segregation by the statute into two interests (section 9856, supra), of what had been before but a single interest for the purpose of fair taxation, caused the mineral rights interest to become something else than land. No ambiguity was corrected by the act of 1929, because none existed. Some authority is found for the above views, in the Arkansas cases (see State ex rel. v. Arkansas Fuel Oil Co., 179 Ark. 848, 18 S.W.(2d) 906; Huffman v. Henderson Co., 184 Ark. 278, 42 S.W.(2d) 221), but the question is not categorically answered in these cases.

What is said above we think fairly disposes of the second point, namely, that it was not till after the passage of the act of 1929, that power to sell a mineral right and make a valid conveyance therefor was lodged in the Commissioner. So, it may be conceded that if the prior recorded deed by the Commissioner to appellee and Patterson was invalid, because the Commis-

sioner had no power either to sell or convey, then appellant took title; holding, as we do, however, that appellee's conveyance was valid, renders appellant's conveyance invalid.

Incidentally this general view disposes of the third contention of appellant, that is, that there is no competent evidence in the record that the Commissioner had ever certified these rights legally to the county clerk, and that their assessment and sale to the state were void. It seems clear that appellant may not raise any of the above questions. It offered, as at least one of its defenses, a conveyance from the Commissioner, to it, of these selfsame rights, which conveyance was based on the identical tax sale to the state, under which appellee claims title. To this extent there was thus shown a common source of title, and the question thus became, simply, whose title from that source is the better?

True, appellant contends that its former title did not pass from it, because of irregularities in the assessment for the taxes of 1910, and in the sale to the state for nonpayment of those taxes. But since appellant both pleaded and offered in evidence, as one of its muniments of title, a conveyance bottomed on that assessment and that sale, it may not here urge any question of the validity of the sale to the state of Arkansas. It may, as it has done, question the validity of the passing of that title in 1921, from the state of Arkansas to appellee. But by pleading the deed from the Commissioner to it, and by offering such deed in evidence, it is estopped to attack the validity of the title of the state of Arkansas, its grantor. True, estoppel was not pleaded, and also true, the doctrine is ordinarily an affirmative one which must be pleaded by him who asserts it; but no reason appears why plaintiff may not have the advantage of estoppel, as against defendant, when facts meet for estoppel, as a matter of law, appear both in the answer of defendant and in the evidence offered by defendant on the trial, and so it has been held. Lusk v. Bush (C. C. A.) 199 F. 369, loc. cit. 376. Other of the so-called affirmative defenses, for example, statutes of limitations, and contributory negligence, may similarly get into a case, even if not pleaded. Tannehill v. Railroad, 279 Mo. 158, 213 S. W. 818.

Since these views suffice to dispose of the case, no need exists to lengthen this opinion by a discussion of other points urged in the brief of appellant. It results from what is said that the case should be affirmed.