CREASEY ET AL *v.* PYRAMID COAL CORPORATION

[No. 17,364.   Filed June 12, 1945.   Rehearing Denied
October 9, 1945.]

*Beasley, O'Brien, Lewis* and *Beasley,* of Terre Haute, for appellants.

*Henry Adamson* and *Lloyd C. Adamson,* of Terre Haute, for appellee.

DOWELL, J.—Appellee, the owner of the coal under lands owned by appellants, brought this action to enjoin appellants from interfering with the construction and maintenance of a high voltage electric transmission pole line on the said lands. Appellee's claim to the right of such construction and maintenance is asserted upon a conveyance to its remote grantors in the year 1905, the said transmission line being used to supply electricity used in the mining of coal. The case having been adjudicated adversely to the appellants it reaches us upon assignment of error that the trial court erred in its conclusions of law, numbered 1 to 5 inclusive, and erred in overruling the motion for a new trial which assails the sufficiency of the evidence and the legality of the decision.

On August 24, 1905, a conveyance of the following tenor and effect was delivered to appellee's predecessors in title:

"This Indenture Witnesseth that Joseph Thompson and Mary Ann Thompson, his wife, of Vigo County in the State of Indiana, Convey and Warrant to William M. Zeller and William J. Snyder of Clay County in the State of Indiana, for the sum of Four Thousand ($4,000.00) dollars, All coal, clay and minerals lying and being below the surface of the following real estate in Vigo County in the State of Indiana, to-wit:

"The South west quarter of the South west quarter and Sixty (60) acres off the South end of the East half of the South west quarter of Section number Twenty-six (26) in Township number Twelve (12) North and of Range Number Eight (8) West one hundred acres more or less.

"With the right to enter upon said lands at any time hereafter and drill or otherwise search and test for coal, clay and minerals to sink a shaft or shafts wherever and whenever desired upon said lands for the purpose of mining and removing the coal, clay and minerals from said lands adjoining lands, or other lands to use not exceeding Five acres of surface at and around any shaft sunk on said premises for the purpose of mining and removing the coal, clay and minerals from said lands adjoining lands or other lands; to make ponds, to build tipples, shafts, barns, shops, dwelling houses or other buildings thereon needed in the mining and removing said coal, clay and minerals from said lands, adjoining lands or other lands; to deposit refuse from said mines on said surface, to build a railroad with all necessary switches and wagon roads over and across said lands, to transport coal, clay and minerals mined in other lands over, through and under said lands and hoist the same through any opening in said lands to transport coal, clay and minerals mined in said lands over, through and under other lands; to sink air and escape shafts upon said lands whenever and wherever desired in the mining and removing coal, clay and minerals from said lands or other lands and to remove

all buildings, machinery and fixtures at any time hereafter from said lands without incurring any liability on Grantees, their heirs or assigns for damages for surface subsidence or caving in on account of the mining and removing the coal, clay and minerals from beneath the surface of said lands and as a part consideration hereof, said Grantees, their heirs and assigns, are hereby forever absolved and released from any and all liability from damages to the surface and appurtenances thereto on account of the mining and removing the coal, clay and minerals from beneath said surface of said lands. Provided, that Grantees, their heirs or assigns, shall pay grantors, their heirs or assigns, at the rate of One Hundred ($100.00) dollars per acre for all surface used other than caving in or subsidence at the time of using the same.

"In Witness Whereof the said Joseph Thompson and Mary Ann Thompson, his wife, have hereunto set their hands and seals this 24th day of August, A. D. 1905.

"Joseph Thompson    (Seal)

"Mary Ann Thompson    (Seal)"

Appellees, having succeeded to the above described property and rights by chain of title which is not challenged here, erected some time in February of 1944, the said transmission line consisting of a series of poles 20 to 30 feet high and approximately 125 feet apart carrying 3 copper wires transmitting an A. C. current of 2300 volts of electricity. These wires are conducted underground to the locale of mining operations through holes drilled from the surface land through the earth to that part of the mine where the motor generator set or convertor is situated from which emanates the power necessary to motivate the mining machinery, and as the mining operation advances laterally, the transmission line is extended in that direction as far as expedient when a new hole is drilled for the purpose of admitting the wires, the purpose being to keep the power inlet as

nearly as possible in perpendicular with the convertor below which is moved as the mining operation advances. This latter is necessary, according to the evidence, because of the fact that the direct current used in the operation and into which the A. C. current is converted at the convertor has a large drop in voltage when transmitted over a distance with a corresponding increase in amperage, or resistance, which is apt to burn out electrical equipment and cause a fire in the mine wherein approximately 400 men are employed. It is the same danger from fire, according to the testimony, which precludes the stringing of high voltage lines entirely underground, the hazard being that from falling slate which could break the wire with a resultant disaster. It was testified that the use of armored cable underground, such as is required by law, is at present impractical on account of wartime restrictions. From all of the above, and more, the opinion of the witnesses coincided to the effect that it is reasonably necessary that the electricity used in the operation of the mine be transmitted overground as hereinabove set out.

Appellants introduced no evidence, but one of their assertions here is that appellee is mining approximately 4500 acres of coal, by far the greater portion of which is under lands other than theirs and that their lands are burdened by the said transmission line which is being used to operate mining machinery under territory remote from their own. This assertion is borne out by appellants' stipulation which presents the same facts.

Appellants' copious but able and interesting brief, reduced to its basic fundament, presents one question upon which all others depend:

■ Has appellee the right, under the conveyance quoted hereinabove, to construct and maintain the said electric transmission line over and upon appel-

lants' land for the purpose of mining coal under said land and under adjoining and other lands?

It is true, as appellants assert, that of the numerous rights expressly granted in the conveyance no inclusion is made of the right for which appellee contends as it likewise appears undisputed from the evidence that at the time of the conveyance mining machinery was operated by steam. The particular mine here involved was converted to a modern electrical mine on April 1, 1943.

Calling our attention to the absence of any such express grant in the conveyance, appellants present the maxim *"expressio unius est exclusio alterius"* and insists that it should be applied in the instant case.

However, generally the maxim is applied in the construction of statutes, it is, as we apprehend it, an aid to construction rather than a rule of law, [*Neuberger* v. *Commissioner* (1940), 61 S. Ct. Rep. 97, 101, 311 U. S. 83], is not of universal application, but is to be applied only as an aid in arriving at intention and is not to be followed to the extent of overriding a different intent. In the case of *Straus* v. *Yeager* (1911), 48 Ind. App. 448, 93 N. E. 877, this court said:

"This maxim, like all rules of construction, is applicable under certain conditions to determine the intention of the lawmaker when it is not otherwise manifest. Under these conditions it leads to safe and satisfactory conclusions; but otherwise the expression of one or more things is not a negation or exclusion of other things."

And in the case of *Brown* v. *Buzan* (1865), 24 Ind. 194, we find this expression:

"Where there is a necessity for mentioning a particular thing, but none whatever for mentioning another thing, to regard the mention of the former as intended to exclude the latter, would be an ex-

ceedingly unnatural and unreasonable rule of interpretation."

We cannot hold the maxim applicable in the instant case. Appellants' predecessors in title were expressly granted certain rights which, taken collectively and so considered, constitute the right to maintain and operate a mine on the lands described for the purpose of removing minerals thereunder and from under adjoining lands and other lands. At the time of the grant, the operation of coal mining machinery by electricity was unknown. There was, therefore, no necessity for mentioning this type of motivating power and the appurtenances necessary for its delivery nor for excluding them. The terms of the grant are so broad and all inclusive that it is clear to us that the grantors intended to give the grantees any and all rights reasonably necessary to the maintenance and operation of the said mine and, indeed, they included therein everything which at that time was known to be reasonably necessary, not only to the mining and removal of the minerals under their own land but from under adjoining lands and other lands.

The trend of modern decisions dealing with circumstances not precisely similar but analogous to those presented by the instant case is to the effect that when an act of the legislature deals with a genus and the thing which afterwards comes into existence is a species of it the language of the act is generally extended to the new things which were not known and could not have been contemplated by the legislature when it was passed. *Watson* v. *Brady* (1932), 205 Ind. 1, 185 N. E. 516.

In that case appellees attempted by the application of the maxim *"expressio unius"* to exclude from the operation of a statute expressly mentioning railroads, an elec-

trically operated interurban road which latter type of transportation medium was unknown at the time the act in question was passed.

While the opinion of the court in that case, and others cited therein, makes no attempt to apply its decision to contracts and conveyances the principle enunciated casts some light upon the present controversy.

The conclusions of law stated by the court below in the instant case are as follows:

"1. That the law is with the plaintiff and against the defendants.

"2. That the deed from Joseph Thompson and Mary Ann Thompson, his wife, to William M. Zeller and William J. Snyder dated the 24th day of August, 1905, was intended to and did convey to William M. Zeller and William J. Snyder and their successors in interest, the express and implied right and authority to make whatever use of the surface overlying the coal, clay and minerals thereby conveyed as was reasonably necessary in removing the coal from beneath the land therein specifically conveyed, and also conveyed the express and implied right to make whatever use of the surface overlying the coal, clay and minerals thereby conveyed which might be reasonably necessary in the mining of coal from adjoining and other lands, and that said rights and privileges have by mesne conveyances been conveyed to plaintiff herein and the plaintiff herein is now the owner of all of said coal, clay and minerals and surface rights and privileges conveyed by the aforesaid deed to William M. Zeller and William J. Snyder; that the defendants' title to their surface real estate herein described is subject to all of said rights and privileges.

"3. That plaintiff has the right to erect and maintain the pole line and string cables thereon as set out herein over and upon defendants' land upon the payment to defendants for surface so used and taken at the rate of $100.00 per acre as set forth in the deed set out in finding No. 3 herein.

"4. That defendants are entitled to the sum of

$6.89 heretofore paid to the clerk of this court and now held by such clerk.

"5. That the plaintiff is entitled to a permanent injunction restraining and enjoining defendants, their heirs, successors and assigns from in any manner interfering with or obstructing the construction, erection, and maintenance of the pole line or power transmission line heretofore erected by plaintiff across defendants' real estate so long as such line is in use by plaintiff in connection with the operation of its coal mine, and that plaintiff should recover of and from defendants its costs in this cause paid, laid out and expended."

They are, in our opinion, supported by the findings and the findings by the evidence.

In the light of opinions hereinbefore expressed we must hold the specifications of appellants' motion for new trial without merit.

*Affirmed.* By the court in banc.

NOTE.—Reported in 61 N. E. (2d) 477.