CONSOLIDATION COAL COMPANY, Adele Wasson, et al., Appellants (Plaintiffs/Counterclaim Defendants Below),

v.

Eldon L. MUTCHMAN, Charles Marvel, et al., Appellees (Defendants/Class Representative Counterclaimants Below).

No. 26A01–8907–CV–00285.

Court of Appeals of Indiana, First District.

Dec. 19, 1990.

Opinion on Denial of Rehearing Feb. 21, 1991.

**1076**

Richard B. Steedman, Evansville, J. William Bruner, Robert R. Aylsworth, Boonville, (Stephen T. Link, of counsel, on the Brief), Evansville, for appellants.

James G. McDonald, Jr., McDonald & McDonald, Charles R. Nixon, Fair & Fair, Verner P. Partenheimer, Hall, Partenheimer & Kinkle, Princeton, for appellees.

ROBERTSON, Judge.

Consolidation Coal Co. appeals the granting of class representative Eldon L. Mutchman's motion to correct error which sought the setting aside of two partial summary judgments granted in Consolidation Coal's favor on its complaint to quiet title, for declaratory judgment and reformation of deeds.

We reverse and direct that a partial summary judgment be entered consistent with this opinion.

This appeal stems from a dispute over certain veins of coal lying in Gibson County, Indiana. Appellant Consolidation Coal Co., lessee, traces its possession through appellants Adele Wasson et al., (collectively referred to as Consolidation), successors in interest to Garry O. Hendrickson and James R. Wasson, who purchased the severed coal estates in fee simple from Gibson County in 1943. Gibson County acquired the severed mineral estates at a tax sale also in 1943. Mutchman, as class representative of the intervenor-owners of portions of the surface overlying the coal estates, claim Wasson and the other appellants hold only foreclosable tax liens as a consequence of the tax sale. The surface owners maintain the coal estates were reunited with the surface and title to the severed estates lapsed by virtue of the Dormant Mineral Act, IND.CODE 32–5–11–1 et seq.

In its March 28, 1984, ruling on the first motion, the trial court granted summary judgment "as to the procedural regularity of the tax sale proceedings as respects assessment, delinquency, notice of delinquency, notice of sale, publication and procedural due process generally" but overruled the motion "on ... the exact nature of the property rights plaintiffs acquired from Gibson County by virtue of the tax sale proceedings and whether or not defendants, Mutchman ... have standing to attack plaintiff's claims of ownership." The second summary judgment adjudicated the issues raised by the surface owners' answer and cross-complaint, i.e., the surface owners' challenge to the validity of the tax deeds, Consolidation's affirmative defenses to that challenge, and the question of lapse, and also Consolidation's complaint to quiet title, i.e., the validity, nature, and extent of Consolidation's title and interest. The second ruling left for trial construction of the deeds insofar as they expressly conveyed rights and interests other than the mineral interests themselves, and, the extent of certain implied rights to use the surface. Following the entry of the second partial summary judgment, the parties agreed that, since mining was not yet underway, the amount of surface reasonably necessary to effectuate the mineral interests was a question not yet ripe for adjudication. The trial court then entered final judgment. The next day, Mutchman filed his motion to correct error, which, after extensive argument, was granted.

Although mention is made of the ruling on the first partial summary judgment,[1] Consolidation's appeal is directed at the issues which were determined by the second partial judgment. Accordingly, we have treated this appeal as one solely contesting the court's action in setting aside the second partial judgment. Thus, on review we must determine whether the record discloses genuine issues of material fact, and, if not, whether Consolidation was entitled to its judgment as a matter of law. Ind.Trial Rule 56(C). We will address the

---

1. Consolidation argues the surface owners are barred from attacking the sufficiency of the legal descriptions used in the tax deeds because the trial court determined the tax *sales* to be procedurally regular in its ruling on the first motion. Consolidation maintains that the summary judgment was transformed into an appealable final order by the granting of Mutchman's motion to correct error, and cites Ind.App. Rule 4(A). Consolidation's argument assumes that the adequacy of the descriptions was an issue upon which summary judgment had been granted; however, it is clear from the text of the trial court's first ruling and conclusion of law number 9 in the second entry that the trial court perceived the issue to be viable when it entered summary judgment for the second time.

issues raised by the surface owners' answer and cross-complaint to quiet title which deal with the validity of the tax sale and the effect of the Dormant Mineral Act first, before addressing Consolidation's title and the extent of its interest.

### I.

### Validity of the Tax Deeds

Consolidation argues that the surface owners lacked standing to challenge the validity of the tax deeds. We agree.

■ A suit to quiet title brings in issue all claims to the property in question. *Brown v. Cody* (1888), 115 Ind. 484, 489, 18 N.E. 9, 12. Hence, a plaintiff may recover only upon the strength of his own title. I.C. 34-1-48-15; *Pachter v. Gray* (1952), 231 Ind. 487, 489, 109 N.E.2d 412, 413. He must show legal title with a present right of possession paramount to the title of the defendant. *East v. Peden* (1886), 108 Ind. 92, 95-96, 8 N.E. 722, 723. It is therefore appropriate under the issues for a defendant to prove the plaintiff and those claiming under him do not have title or interest in the property. *Brown*, 115 Ind. at 484, 18 N.E. 9.

■ A defendant need not act affirmatively by cross-complaint but may introduce any facts through his general denial which according to principles of equity would defeat the plaintiff in obtaining a decree quieting title to the land in controversy. *Peden*, 108 Ind. at 94, 8 N.E. 722; *Reed v. Kalfsbeck* (1897), 147 Ind. 148, 45 N.E. 476. He may avail himself of any imperfection in the title of the plaintiff and may defeat the action by proving a subsisting outstanding legal title in a third person with whom the defendant is not connected. *Peden*, 108 Ind. at 94, 8 N.E. 722. However, a plaintiff may not avail himself of an alleged outstanding *equity* in favor of an indifferent stranger with whom he stands in no sort of legal privity. *Id.* In cases of mistake in written instruments, courts of equity will interpose their aid only between the original parties and those claiming under them in privity. *Id.* at 97, 8 N.E. 722.

Thus in *East v. Peden*, the court reversed a judgment in favor of a defendant in possession who conceded he had not acquired legal title in a conveyance from the plaintiff, where the trial court permitted the defendant to show that title lie not with the plaintiff but with an earlier grantee to whom the plaintiff had intended to convey her interest but by mistake in the description had failed to do so. Since the appellee-defendant claimed no right through the deed in question, the court determined that he was not in a position to assert a mistake and seek a correction so long as the parties to the instrument were content with the description as written. "The outstanding equity in a third person, which will afford shelter for a defendant in possession, without title, against a legal title in the plaintiff, must be such an equity as the defendant would have the right, by making proper parties, to invoke the aid of a court of chancery to enforce in his favor." 108 Ind. at 96.

■ The surface owners do not claim title through the owners of the severed estates prior to the tax sale. They therefore would have no right to bring an action on behalf of the prior owners to quiet title or petition the court for relief.

The result in *East v. Peden* is consistent with Indiana's real party in interest doctrine. *See* T.R. 17(A)(1). A real party in interest objection presupposes that the claimant does not have the substantive right to enforce the claim he is making. *State v. Rankin* (1973), 260 Ind. 228, 230, 294 N.E.2d 604, 606. Real party in interest status requires that the claimant have a present and substantial interest in the relief sought; in other words, he must be entitled to the fruits of the action. *Cook v. City of Evansville* (1978), 178 Ind.App. 20, 381 N.E.2d 493.

Without question, the Dormant Mineral Act authorizes a quiet title action by the surface owners to obtain an adjudication that the conditions identified by the Act exist, thereby vesting in them legal title to the land free of the mineral servitude which formerly existed. *See generally, Short v. Texaco, Inc.* (1980), 273 Ind. 518,

406 N.E.2d 625, *affirmed,* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. But that claim is free-standing; the surface owners concede that their sole source of title is dependent upon the Act. Once that potential interest has been litigated and determined adversely to them, they have no other legal basis for a claim to title, as the severed coal estates are vested property interests separate and distinct from the surface ownership, entitled to the same protection as fee simple titles. *Id.* 406 N.E.2d at 627.

■ Alternatively, Consolidation maintains that the surface owners are barred by the statutes of limitation from contesting the sufficiency of the tax deeds. Both conveyances, from the auditor of Gibson County to Gibson County and from Gibson County to Consolidation's lessors' predecessors, occurred in 1943. The statute of limitation in effect at the time provided

[t]hat no action to contest the validity of any title acquired as a result of any sale of any real estate under this act shall be brought after the expiration of one year from the date of the execution of the deed.

Acts of 1941, ch. 224, § 41 (Burns' 1943 Replmt § 64–2212). In 1947, a second statute of limitation was added:

All sales of real estate heretofore made to any county or other persons pursuant to chapter 224 of the Acts of 1941 and all acts amendatory thereof, and all certificates and deeds heretofore executed by county auditors for any such real estate pursuant thereto are hereby legalized and rendered valid. Nothing in this section shall affect pending litigation. From and after the passage of this Act, no action to contest the validity of any title acquired as a result of any sale of real estate so acquired by any county or other persons under said chapter 224 and acts amendatory thereof shall be brought after the expiration of one year from the date of the deed to the County or other persons.

Acts 1947, ch. 309 § 2 (Burns' 1951 Replmt § 64–2203a). The one year period of limitation is applicable in the absence of evidence the tax sale or deed was a nullity or that the statute of limitation has been tolled by reason of lack of notice, fraud, or concealment. *O'Donnell v. Krneta* (1958), 238 Ind. 582, 154 N.E.2d 45; *Gradison v. Logan* (1963), 135 Ind.App. 185, 190 N.E.2d 29, *trans. denied.*

Assuming the purported insufficiency in the legal description rendered the conveyances ineffective, § 64–2203a nonetheless cures such omissions and legalizes the sale made by the county pursuant to the 1941 Act. *See Quinn v. Stein* (1959), 130 Ind. App. 20, 161 N.E.2d 622. The legislature has the power, where not restrained by a constitutional provision, to make a void thing valid by curative legislation. *Walpole v. Elliott* (1862), 18 Ind. 258, 259. An act defectively or irregularly executed by a public officer may be validated by a subsequent statute, provided the infirmities sought to be remedied are not jurisdictional in nature and the statute does not deprive a party of a fundamental right or violate the constitution in some other way, such as by impairing the obligation of contract or by taking property without due process or just compensation. *Osann v. Purported Town of Portgage* (1961), 132 Ind.App. 695, 177 N.E.2d 666, *trans. denied; Martin v. Ben Davis Conservancy District* (1958), 238 Ind. 502, 512, 153 N.E.2d 125, 130; *Yelton v. Plantz* (1950), 228 Ind. 79, 84, 89 N.E.2d 540, 543.

In the present case, the surface owners had no interest in the severed estates at the time of the tax sale and conveyance by the Gibson County auditor and do not now claim that the auditor was without power to convey the severed estates or that they had some vested interest in the severed estates. Hence, even if the tax deeds were a nullity *ab initio,* the county's title was legalized by § 64–2203a.

The trial court therefore need not have reached the merits of Mutchman's claim that the tax deeds were void. Summary judgment in favor of Consolidation on this issue was proper as a matter of law on the basis of standing or the statutes of limitation.

## II.

### Dormant Mineral Act

█ The surface owners claim title to the coal estates pursuant to I.C. 32–5–11–1, the Dormant Mineral Act. The Act puts an end to interests in coal, oil, gas or other minerals which have not been used for twenty years. Payment of taxes by the owner of the mineral interest constitutes a "use" of the interest which continues it in force and preserves it from extinguishment. I.C. 32–5–11–3; *Short*, 406 N.E.2d at 627.

The admissions on file show that all taxes have been paid to date since the tax sale in 1943 and that the persons who paid the taxes on the coal estates were persons who claimed an interest in the coal estates through the tax deeds. Hence, no reversion of the coal estates occurred. As a matter of law, no title vested in the surface owners by virtue of the Act and they were not entitled to a judgment on their cross-complaint.

Consolidation urges us to decide whether the Act applies at all where as here Consolidation's interest is solely in coal and not, in the language of the Act, "in coal, oil and gas, and other minerals." *See* I.C. 32–5–11–1. Consolidation maintains that for the act to apply, the owner must hold each of the mineral freeholds. *See Knight v. Indiana Coal & Iron Co.* (1874), 47 Ind. 105, 110. *But cf., McCoy v. Richards* (S.D. Ind., 1983), 581 F.Supp. 143, 147, *affirmed*, 771 F.2d 1108. Given, however, that there is no real question of extinguishment, interpretation of the Act in this case is unnecessary.

## III.

### Consolidation's Title

█ § 64–2404, (Burns' 1943 Replmt.), the statute governing at the time of the tax sale, created a prima facie presumption that the grantee held "a good and valid title in fee simple." Under the statute, a tax deed was sufficient, in the absence of any evidence to the contrary, to establish fee simple title in the grantee. *Pachter v. Gray* (1952), 231 Ind. 487, 490, 109 N.E.2d 412.

Consolidation established that it acquired record title in fee by deed from Gibson County which obtained its title to the mineral estates by tax deed. *See, Wilson v. Carrico* (1900), 155 Ind. 570, 58 N.E. 847; *Murray v. Holland* (1940), 108 Ind.App. 236, 27 N.E.2d 126 (Quitclaim deed from purchaser at tax sale vested "same prima facie good and valid title" in BFP). Evidence of fee simple title establishes a prima facie case for quiet title. *Otterman v. Hollingsworth* (1966), 140 Ind.App. 281, 214 N.E.2d 189.

### A. Loss by nonuse, abandonment, adverse possession, estoppel

█ At common law, an owner of a mineral did not lose it by nonuse, abandonment or cessation in working the mine. *McBeth v. Wetnight* (1914), 57 Ind.App. 47, 106 N.E. 407. However, the legislature altered that rule by enactment of the Dormant Mineral Act. The Act extinguishes mineral rights which have not been "used" for the statutory period. We have already determined that the mineral interests involved in this case have been used within the meaning of the Act and are not subject to extinguishment.

The owners of the surface can ripen a title to a mineral interest by adverse possession; however, to succeed, they must show a disseizin of possession of the mineral right, i.e. acts or conduct on the part of the surface owner by which it would be apparent to persons of ordinary prudence that he is claiming and exercising ownership over the mineral interest. *McBeth*, 57 Ind.App. at 57, 106 N.E. 407. Although evidence of *surface* usage is cited by Mutchman, Mutchman did not offer any evidence of possession of the mineral interests adverse to Consolidation and independent of the surface by the surface owners. Moreover, Consolidation has continued to pay the taxes. *See e.g.* I.C. 32–1–19–1; I.C. 32–1–20–1.

█ Likewise, although title may also pass by estoppel, *Wienke v. Lynch* (1980), Ind.App., 407 N.E.2d 280, 283, n. 3, estop-

pel must be pleaded to constitute a valid ground of defense. *Schill v. Choate* (1969), 144 Ind.App. 543, 555, 247 N.E.2d 688, 697. Where as here, the issue is first raised in the motion to correct error, it is waived. *Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221, 1224.

The record does not reveal a genuine issue of *material* fact concerning the state of Consolidation's title. The trial court was therefore correct initially in its decision to quiet title to the mineral interests in Consolidation's lessors.

## B. Estate Acquired

 The parties agreed that the 116 deeds could be grouped according to the language of the grant into five sets, and offered to the trial court two deeds of each set. The trial court concluded that the severance instruments were unambiguous and were intended to convey "all coal" regardless of the methodology which might be employed to remove it or the depth where the coal could be found, except in those instances where the language expressly limited the grant to a certain vein or seam or conveyed all but a certain vein or seam. With respect to the express rights granted the owners of the coal estates, limitations imposed on the coal owners, and certain options contained in the deeds, however, the court could not determine whether as a matter of law the rights were in gross or appurtenant. The court also noted the existence of a factual question concerning the extent of surface reasonably necessary for the proper operation of the mine.

Mutchman's position on the deed construction issue is that the deeds were intended to convey only that coal which was minable at the time of the conveyance, i.e. that which could be removed by the underground method only. In so arguing, he relies primarily upon out-of-state cases which have rejected the notion that ownership of the coal necessarily implies the right to remove it by strip mining, even though other methods may not be feasible and have held that the right to strip mine is not incident to ownership of a mineral estate.

*Wilkes–Barre Township School District v. Corgan* (1961), 403 Pa. 383, 170 A.2d 97, cited by Mutchman, involved a conveyance of the surface reserving to the grantor title to the coal with the right to remove it. The court reasoned in that case that to construe the reservation as affording the right to mine the coal by destroying the surface would be inconsistent with the grant of the surface itself. In addition, the court could not reasonably conclude that in 1893, when vertical tunneling or shaft mining was commonplace, the parties contemplated and intended the surface would be strip mined.

In *Stewart v. Chernicky* (1970), 439 Pa. 43, 266 A.2d 259, the grantor conveyed by deed dated 1902 "all the coal in and under the tract with the right to remove the same without liability for injury to the surface." *Id.* 266 A.2d at 261. Pennsylvania had adopted the rule that to engage in strip mining, a party must either own or possess both the coal and surface estates or own or possess a coal estate which included the right to employ the strip mining method; accordingly, Pennsylvania common law places the burden upon the party seeking the right to destroy or injure the surface to show some positive indication that the parties to the deed agreed to authorize practices which may result in destruction of the surface. When it consulted the language of the deed itself, the *Stewart* court found terms peculiarly indicative of shaft mining only, distinguishing *Commonwealth v. Fitzmartin* (1954), 376 Pa. 390, 102 A.2d 893 which permitted strip mining on the ground that any other interpretation of the grant would render the conveyance meaningless.

West Virginia has adopted an even stricter approach, refusing to imply a right to strip mine even when to mine by that method is the only means of removing the coal from the vein conveyed. In *West Virginia–Pittsburgh Coal Co. v. Strong* (1947), 129 W.Va. 832, 42 S.E.2d 46, the court reasoned from the common law proprietary right to subjacent support that a surface owner had an equal right to hold intact the

thing to be supported in the absence of a clearly expressed intention to the contrary. The court found in the deed an option to purchase surface occupied above the vein which plainly showed that it was not within the contemplation of the parties that the coal owner, by virtue of the mining rights granted, was entitled to remove any part of surface, except for the mouths of shafts. According to the court, the words "occupied or used" did not contemplate destruction but presupposed the existence of the surface.

Ohio also follows this line of thought, noting the logical incongruity in the co-existence of a right to subjacent support with an implied right to strip mine. *Skivolocki v. East Ohio Gas Company* (1974), 38 Ohio St.2d 244, 313 N.E.2d 374, 377, n. 1. In addition, the Ohio Supreme Court believes an implied right to strip mine destroys the accomodation between surface and coal estate reflected by the rule that the mineral estate carries with it the right to use as much of the surface as may be reasonably necessary. *Id.*

The deeds in the present case vary greatly. Some simply grant "all coal" underlying the estate, with and without the provision "grantee not liable for damages to the surface," while others contain rights to use the surface, within limits, as may be necessary for shafts, "granting all such rights as may be necessary for the best operation of the coal mines," without liability for subsidence of the surface. Some contain options to purchase surface; others require payment for the use of the surface taken. Two sets appear to severely limit surface use, either by expressly stating that it is not the intention of the grantors to "grant any surface rights," or requiring the grantee to accommodate surface farming and pay damages for crops as the damage occurs.

Even though the grants vary, Indiana law provides support for the trial court's initial conclusion that a conveyance of "all coal" is unambiguous. In *Ingle v. Bottoms* (1902), 160 Ind. 73, 66 N.E. 160, the lessee in a coal mining lease sought to enjoin the lessor-surface owner from interfering with the construction of a railroad switch which he alleged was necessary for the operation of the mine. The court held that the grant of the right to the coal carries with it as a necessary incident the right not only to penetrate the surface of the soil for coal, but also to use such means and processes for mining and removing the coal from the premises as may be reasonably necessary, including the right to construct such roads and railroad tracks on the surface as are necessary for the transportation of supplies, machinery and for removing coal from the mine openings. *Id.* at 79, 66 N.E. 160. How much of the surface was reasonably necessary for the proper operation of the mine was a question of fact. *Id.*

The surface owner argued that by the terms of the lease, the appellant had been restricted in his use of the surface to one acre. However, the court construed the restriction as a limitation on the use of the surface for purposes other than mining, for to construe the reservation as controlling the entire lease and limiting the right expressly granted would destroy the lease and prevent the appellant from carrying out the lease by mining all coal under the land.

In *Drake v. Durreger* (1937), 104 Ind. App. 323, 11 N.E.2d 88, the surface owner's complaint alleged that whatever right the coal owner (who had excavated 2 acres of the surface for the purpose of removing coal beneath the surface) had to remove coal through the strata, it was by shaft only; that the surface real estate had been used and was best fitted as agricultural land; that the coal owner had installed a drag line and was stripping the dirt above the coal bed; and that the coal could be reached by sinking a shaft to the strata with less damage and injury. Applying the principles espoused in *Ingle*, this court treated the existence of a right to surface mine as a question of fact—whether the operations of the coal owner were unreasonable and unnecessary in removing the coal from the real estate involved. The grant in *Drake* entitled the coal owner to dig, mine, and remove the coal without liability for caving or subsidence of surface incident to mining and removing the coal.

Finally, in *Creasey v. Pyramid Coal Corp.* (1945), 116 Ind.App. 124, 61 N.E.2d 477, the coal owner constructed an electric transmission line. The conveyance, though containing numerous rights expressly granted, did not include the right to construct a transmission line, for at the time of the grant the operation of coal mining machinery by electricity was unknown. The court noted however that the terms of the grant were so broad and all-inclusive that it was clear the grantors intended to give the grantees any and all rights reasonably necessary for the operation of the mine. Observing the principle of statutory construction which extends legislation to new things a species of which has already been dealt with by legislation, this court affirmed the trial court's conclusion of law that the deed conveyed the express and implied right to make whatever use of the surface overlying the coal as was reasonably necessary in removing the coal from beneath the land.

From this trilogy of cases, we deduce that in Indiana the question is not so much whether the deed is ambiguous but whether strip mining, even though not contemplated by the original parties, is reasonably necessary to effectuate the grant. This rationale, though clearly applicable to the majority of deeds, does not address those cases where the grantor expressly set out to preclude use of the surface or required immediate payment of damages for injury to crops. In those cases, "all coal" may not have been intended to include the coal removable only by destroying the surface. Such grants are ambiguous and subject to more than one reasonable interpretation. To construe these deeds, it would be appropriate to permit the introduction of extrinsic evidence to aid in construction. Accordingly, we conclude that summary judgment as a matter of law should not have been granted Consolidation with respect to those deeds which expressly preclude use of the surface or which require immediate payment of damages for injury to the surface.

## C. Nature of Other Express Rights

The trial court ruled that a fact question existed as to whether it was the intent of the parties to create rights which were appurtenant to the severed estates and run with the land, as opposed to personal rights. Consolidation maintains that this issue may be determined as a matter of law. All of the express rights concern mining only on the servient estate but two: the right to haul coal from adjoining lands through entries driven in the underlying coal, and the right of first refusal to purchase other veins of coal.

No Indiana cases address express incorporeal rights created with and in addition to the grant of a mineral estate. Therefore, we must analogize to the law of easements (incorporeal qualities imposed on corporeal property, *Shirley v. Crabb* (1894), 138 Ind. 200, 203, 37 N.E. 130). Easements appurtenant are described as incident to an estate. *Sanxay v. Hunger* (1873), 42 Ind. 44, 48. They cannot be turned into easements in gross because they are inseparably united to the land to which they are incident. *Moore v. Cross* (1873), 43 Ind. 30, 34.

To be appurtenant, an easement must inhere in the land, concern the premises and be essentially necessary to its enjoyment. Easements appurtenant are of the nature of covenants running with the land, and like them must respect the thing granted and must concern the land or estate conveyed. *Id.; Hoosier Stone Co. v. Malott* (1891), 130 Ind. 21, 29 N.E. 412.

Appurtenant rights are those which benefit the owner of land in a way that cannot be separated from the land. R. Cunningham, W. Stoebuck, & D. Whitman, Law of Property Ch. 8 § 8.2 (Lawyers ed. 1984). The benefits to be realized by the easement must benefit the possessor in his physical use or enjoyment of that land, not just make use of that land more profitable. *Id.*, § 8.6. This is also the Restatement view. Restatement of Property § 453 (1944). A way is never presumed to be in gross when it can be fairly construed to be appurtenant. *Sanxay*, 42 Ind. at 48.

A right which actually becomes an appurtenance needs no express grant to convey it. The conveyance of the dominant

estate carries the easement. *Ross v. Thompson* (1881), 78 Ind. 90, 98; *Parish v. Kaspare* (1886), 109 Ind. 586, 589, 10 N.E. 109.

■ An appurtenant easement acquired by actual grant cannot be lost by mere nonuser. *Cleveland, Cincinnati, Chicago & St. Louis Railway Co. v. Griswold* (1912), 51 Ind.App. 497, 97 N.E. 1030, *trans. denied; Jeffers v. Toschlog* (1978), 178 Ind.App. 603, 607, 383 N.E.2d 457, 459.

■ The benefits of an easement in gross serve the holder only personally, not in connection with his ownership or use of any specific parcel of land. Under these circumstances, no parcel can truly be called dominant. Law of Property, § 8.2. The benefit of an easement in gross is not an incident of the possession of the land because the uses authorized do not benefit a possessor of land in the use of the land possessed. *Id.*, § 8.6.

■ Accordingly, if an appurtenant right must be essentially necessary to the enjoyment of the coal estate, the right to haul coal from adjoining lands through entries in the coal of the described premises must be a personal benefit conveyed the grantee. It does not benefit the coal owner in the enjoyment of the coal estate itself but makes adjacent coal estates more profitable or benefits the adjacent estate. *Cf. Hoosier Stone Co. v. Malott* (1891), 130 Ind. 21, 29 N.E. 412 (land conveyed with right of way across other lands to move stone from land to railroad, for which consideration in gross, appurtenant).

■ Likewise, the right of first refusal, which appears in only one set of deeds, can only be interpreted as a right in gross as it expressly states it is given to the grantee, and it is not essentially necessary; nor does it benefit the mineral estate.

■ The other express rights can all be fairly construed as appurtenant. First, the deeds do not expressly convey any rights which under Indiana law would not be implied if reasonably necessary. Indeed, many of the deeds condition the various rights on necessity or *reasonable* necessity. Hence, the connection to the dominant estate is present. Second, there can be no doubt that the express rights conveyed benefit the possessor of the coal estate in the enjoyment of that estate. Third, the express rights to build railroad switches, etc. are appurtenant under *Hoosier Stone.* Fourth, some of the deeds contain express language demonstrating the grantor's intent to make the rights binding upon his heirs and successors. Finally, we note the existence of I.C. 6–1–20–4 which provides in pertinent part that "whenever, distinct from the ownership of the surface thereof, by deed, contract, reservation in any conveyance or otherwise, an estate is created … in any mines or minerals therein, any and all subservient interests or rights shall be deemed real property."[2]

Thus, as Consolidation argues, the trial court could have determined as a matter of law the nature of the express rights conveyed with the mineral estates. All are appurtenant but the right to transport coal from adjoining estates through entries in the coal, and, the right of first refusal.

### D. Rule Against Perpetuities

■ The surface owners argue that options to purchase surface acreage contained in some of the deeds are void as restraints against alienation. The argument goes that options, indefinite as to time, postpone vesting of title in the surface and effectively create two surface interests, inhibiting free alienation of the surface estate. The trial court disagreed, concluding in its decision granting partial summary judgment that the provisions in question which provide for the purchase of surface acreage at fixed prices per acre or which contain first refusal rights to purchase other veins of coal do not violate the rule against perpetuities. Indiana has not addressed the issue.

**2.** The trial court's ruling on the motion to correct error also set aside the determination that the rights appurtenant were taxed as part of the mineral estate. The surface owners do not address this determination. It stands to reason that if the rights were appurtenant, they would be taxed as part of the mineral estate.

Mutchman cites the West Virginia case discussed previously, *West Virginia–Pittsburgh Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 and both parties cite *Quarto Mining Co. v. Litman* (1975), 42 Ohio St.2d 73, 326 N.E.2d 676, *cert. denied*, 423 U.S. 866, 96 S.Ct. 128, 46 L.Ed.2d 96. The *Strong* case holds that an option to purchase surface which the coal owner might use or occupy, which transfers an interest of any sort in the land, violates the rule against perpetuities. The holding stems from the determination that the provision at issue, which bound only the surface owner, made purchase of the surface a condition precedent to the right to use the surface over the No. 8 vein and should be treated as an option to acquire title. Notably, the dissent construes the payment of $100 per acre to be an express requirement which the grantees had to meet before they could occupy and use any of the surface above the No. 8 vein, observing that the deed conveyed all the coal absolutely without restrictions on removal but for the clause concerning the surface over vein No. 8. Accordingly, under the deed, when the grantees paid the agreed sum, they had the right to remove the coal in the No. 8 vein independent of the right to a conveyance of the surface. Evidently, the parties contemplated that the No. 8 vein would be removed and after removal, the overlying surface would be of little or no value.

The *Quarto* case distinguishes *Strong* on the basis the *Strong* option provision was not limited to the purchase of surface land necessary for mining but permitted purchase of all land overlying the vein of coal, in essence, the fee. *Quarto* holds that an option, without time limitation, to purchase surface ground necessary for the exercise of mining rights granted incident to the sale of the underlying coal is not void as a restraint against alienation. *Quarto* views such an option as vested in possession *as a part of the mineral estate*, which, like a long-term lease with an option to buy, is alienable as part of the estate, the use of the surface estate being a necessary inci-

dent to the use and enjoyment of the underlying mineral estate. The taking of part of the surface estate necessary for mining, by means of an option, prevents an uncompensated taking for use under an easement.

All of the deeds in question fit the *Quarto* requirement of necessity; indeed, each of the deeds can be read as expressly conditioning the taking of surface acreage on necessity for mining purposes. Consequently, as we indicated in the prior section, the options are not in-gross but appurtenances which are conveyed with the mineral estate and are not void as a restraint on alienation. The trial court reached this conclusion before it granted the surface owners' motion to correct error. Its inital determination on this issue should be reinstated.[3]

### IV.

#### Evidentiary Errors

The surface owners argue that the depositions of Mr. Powell and Stachura should be considered in determining the issues in this appeal, and that the affidavit of Bernard Lewis, concerning drill holes and core samples, should not have been considered. We have been able to rule upon the questions presented as matter of law without resort to the evidence contained in the depositions or affidavit. Consequently, we need not rule upon the propriety of use of these discovery materials.

#### Summation

The trial court's original grants of partial summary judgment in favor of the coal owners were correct in all but the following respects: (1) the determination that it could not rule as a matter of the law as to the nature, in gross or appurtenant, of certain express rights conveyed with, and implied rights arising from, the mineral estate, and (2) the ambiguity of the deeds as they relate to surface mining. Whether certain proposed practices and operations,

---

**3.** The coal owners challenge the trial court's ruling only as it relates to the validity of the options. Therefore, there is no reason to con-

sider whether the agreed upon compensation for surface taken is equitable.

and the exercise of the options, are reasonably necessary requires the presentation of evidence. However, those remaining issues were dismissed following the entry of summary judgment and are now moot.

Accordingly, we conclude that partial summary judgment in favor of Consolidation Coal Co. should be entered consistent with this opinion. Extrinsic evidence should be taken to enable the court to construe those deeds which we have determined to be ambiguous. In all other respects, the granting of the surface owners' motion to correct error is reversed.

RATLIFF, C.J., and BAKER, J., concur.

## OPINION ON REHEARING

ROBERTSON, J.

The Petition for Rehearing of appellant Mutchman is in all respects denied. However, the original majority opinion incorrectly cites a statute, Ind. Code 6–1–20–4, which has been repealed. Acknowledgement of this error does not change our conclusion that the express rights, with the exception of those specified in the original opinion, are appurtenant.

We note, in addition, that Mutchman represented to the trial court when it filed its motion for partial summary judgment that there were no genuine issues of material fact which would prevent the entry of a summary judgment in his favor. With the entry of summary judgment in favor of Consolidation Coal on Consolidation Coal's cross motion for summary judgment, the facts are deemed established under Ind. Trial Rule 56(D). Mutchman cannot now change his position and argue the existence of a genuine factual issue as a ground for denying summary judgment in Consolidation Coal's favor. *Franklin Bank & Trust Co. v. Mithoefer*, 563 N.E.2d 551 (Ind., 1990).

RATLIFF, C.J., and BAKER, J., concur.