# FOR PUBLICATION



FILED

May 15 2013, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**JEFFREY B. KOLB**
**CHRISTOPHER MICHAEL RIPLEY**
Kolb Roellgen & Kirchoff LLP
Vincennes, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY A. LEWELLYN**
Wilkinson, Goeller, Modesitt,
Wilkinson & Drummy, LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RICHARD J. BOND and JANET A. BOND, et al.,          )
                                                    )
        Appellants-Defendants,                      )
                                                    )
        vs.                                         )    No. 42A01-1209-PL-419
                                                    )
TEMPLETON COAL COMPANY, INC.,                       )
                                                    )
        Appellee-Plaintiff.                         )

APPEAL FROM THE KNOX SUPERIOR COURT
The Honorable Gregory A. Smith, Special Judge
Cause No. 42D01-0611-PL-34

**May 15, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Richard J. Bond and Janet A. Bond[1] ("the Bonds") appeal the trial court's grant of summary judgment for Templeton Coal Company, Inc. ("Templeton") on Templeton's complaint to quiet title to certain mineral interests. The Bonds present a single issue for our review, which we restate as whether Templeton's use of the mineral interests from 1964 to the present, following a thirty-five-year period of nonuse, precludes lapse of those interests under the Indiana Mineral Lapse Act, Indiana Code Sections 32-23-10-1 to -8 ("the Act").[2] We affirm the trial court's grant of summary judgment for Templeton.

**FACTS AND PROCEDURAL HISTORY**

The parties stipulated to and designated the following relevant facts. In 1962 and 1976, the Bonds became the owners of certain real property totaling about 173 acres in Knox County. In May of 1929, certain mineral interests, including coal, underlying that property had been severed and conveyed to the Linton-Summit Coal Company ("LSCC"). In February of 1960, Templeton merged with the LSCC and became the owner of the severed mineral interests.[3] From 1964 to the present, Templeton has paid appropriate taxes on its mineral interests.

The Bonds asserted that Templeton's interests in the minerals had lapsed under the Act due to nonuse for twenty or more consecutive years and, as such, the Bonds were the

---

[1] Defendant-Intervenor Vectren Fuels, Inc. has joined Templeton's brief on appeal. The other named defendants below do not participate in this appeal.

[2] The Act is also known as the Dormant Mineral Act.

[3] The parties agree that their respective interests in the real property and the minerals were properly recorded by numerous documents. Because the record dates are not relevant to this appeal, for ease of discussion we discuss only the parties' stipulated dates of ownership.

proper owners of those interests under Indiana law. In November of 2006, Templeton filed a complaint against the Bonds and others to quiet title to the severed mineral interests. After the parties had settled the remainder of their claims, they filed cross-motions for summary judgment on the question of ownership of the mineral interests. In a comprehensive order, the trial court granted summary judgment to Templeton.[4] In particular, the court concluded that the Act applied retroactively to 1951, but not before 1951; that paying taxes on the mineral interests constituted a "use" of those interests under the Act; and that Templeton never failed to use its interests for twenty consecutive years during a timeframe to which the Act applied. Accordingly, the court entered summary judgment for Templeton. This appeal ensued.

## DISCUSSION AND DECISION

The Bonds appeal the trial court's grant of summary judgment for Templeton. Our standard of review for summary judgment appeals is well established:

> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

---

[4] Though the parties' motions were styled as motions for partial summary judgment, there is no dispute that their settlement of all other claims rendered the court's entry of summary judgment a final judgment. Further, the court expressly entered its summary judgment as a final judgment pursuant to Trial Rule 54.

<u>Dreaded, Inc. v. St. Paul Guardian Ins. Co.</u>, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). Where, as here, the facts are undisputed and the issues presented are pure questions of law, we review the matter de novo. <u>Crum v. City of Terre Haute ex rel. Dep't of Redev.</u>, 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

This appeal requires us to construe the Act. Our goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. <u>Ind. Pesticide Rev. Bd. v. Black Diamond Pest & Termite Control Inc.</u>, 916 N.E.2d 168, 181 (Ind. Ct. App. 2009), <u>trans. denied</u>. When a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. <u>Id.</u> We review the statute as a whole and presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. <u>See</u> <u>Curley v. Lake County Bd. of Elections & Registration</u>, 896 N.E.2d 24, 34 (Ind. Ct. App. 2008) (quotation omitted), <u>trans denied</u>. In other words, "we are obliged to suppose that the General Assembly chose the language it did for a reason." <u>State v. Prater</u>, 922 N.E.2d 746, 750 (Ind. Ct. App. 2010), <u>trans. denied</u>.

The only issue in this appeal is whether the Act applies retroactively, which is a question of first impression for this court. As our supreme court has explained: "The general rule of statutory construction is that[,] unless there are strong and compelling reasons, statutes will not be applied retroactively. Statutes are to be given prospective effect only, unless the legislature unequivocally and unambiguously intended

4

retrospective effect as well." State v. Pelley, 828 N.E.2d 915, 919 (Ind. 2005) (citations omitted).[5]

The Act is in derogation of the common law. "At common law, an owner of a mineral did not lose it by nonuse, abandonment or cessation in working the mine. However, the legislature altered that rule by enactment of [the Act]. The Act extinguishes mineral rights which have not been 'used' for the statutory period." Consolidation Coal Co. v. Mutchman, 565 N.E.2d 1074, 1080 (Ind. Ct. App. 1990) (citation omitted), trans. denied. It is well established that "a statute in derogation of the common law must be strictly construed," as we "presume that the legislature is aware of the common law and intends to make no changes therein beyond its declaration either by express terms or unmistakable implication." Clark v. Clark, 971 N.E.2d 58, 62 (Ind. 2012) (citations and quotation omitted).

Our legislature passed the Act in 1971 "to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable mineral resources." Short v. Texaco, Inc., 273 Ind. 518, 406 N.E.2d 625, 630 (1980), aff'd, 454 U.S. 516 (1982). Thus, according to Indiana Code Section 32-23-10-2:

> An interest in coal, oil and gas, and other minerals, if unused for a period of twenty (20) years, is extinguished and the ownership reverts to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved. However, if a statement of claim is filed in accordance with this chapter, the reversion does not occur.

Under Indiana Code Section 32-23-10-4, a "statement of claim under Section 2 of this chapter must: (1) be filed by the owner of the mineral interest before the end of the

---

[5] There is no dispute that the exception for remedial statutes, that is, statutes intended to cure a defect or mischief that existed in a prior statute, does not apply here. See Pelley, 828 N.E.d at 919.

twenty (20) year period set forth in [S]ection 2 . . . ." And Indiana Code Section 32-23-10-3(a) provides: "A mineral interest is considered to be used when: . . . (6) taxes are paid on the mineral interest by the owner of the mineral interest." In other words, payment of taxes on the mineral interest by the owner tolls the twenty-year dormancy period. Miller v. Weber, 839 N.E.2d 204, 209-10 (Ind. Ct. App. 2005), trans. denied.

On appeal, the Bonds assert that Templeton's mineral interests have lapsed under the Act based on the thirty-five-year period of nonuse between 1929 and 1964. There is no dispute that, from 1964 to the present, Templeton's payment of taxes on its mineral interests constituted a "use" under Indiana Code Section 32-23-10-3(a)(6). There is also no dispute that Templeton never filed a statement of claim pursuant to the Act. See Ind. Code § 32-23-10-4. Thus, the only question in this appeal is whether the Act applies retroactively to the 1929-1964 time period.

The Act does not explicitly state that our legislature intended for it to apply retroactively. However, the original language of the Act provided that the "statement of claim . . . shall be filed by the owner of the mineral interest prior to the end of the twenty (20) year period [described in Section 2[6]] or within two (2) years after the effective date of this act, whichever is later . . . ." I.C. § 32-5-11-4 (1971) (emphasis added). That statute was subsequently amended to replace "within two (2) years after the effective date of this act" with "before September 3, 1973," or two years and one day after the effective date of the Act. See Pub. L. No. 187, § 48 (1982); see also Short, 454 U.S. at 518 (noting that the effective date of the Act was September 2, 1971).

---

[6] Section 2 of the Act has not been materially changed since 1971.

In light of the original statutory language, it is clear that our legislature intended for the Act to apply retroactively to some behavior that predated the Act. If the Act were intended to be prospective only, the 1971 language that a statement of claim be filed "within two (2) years after the effective date of this act, whichever is later" would serve no purpose. See I.C. § § 32-5-11-4 (1971). That is, under a purely prospective approach, the end of the twenty-year period would always be later than a date within two years after the effective date of the Act.

Thus, the language "or within two (2) years after the effective date of this act, whichever is later," makes sense only if our legislature intended for the Act to apply retroactively. When the Act is applied retroactively, there are circumstances in which a date within two years of the effective date of the Act is later than the twenty-year period described in Section 2. And in those circumstances, the Act provided a two-year grace period to file a statement of claim to preserve unused mineral interests. See Am. Land Holdings of Ind., LLC v. Jobe, 655 F. Supp. 2d 882, 890 (S.D. Ind. 2009), aff'd on other grounds, 604 F.3d 451 (7th Cir. 2010). That grace period ended before September 3, 1973.

The question remains to what extent the Act applies to behavior that predated the Act. In other words, the Bonds contend that Section 2 of the Act is unambiguous and applies retroactively to all potentially extinguishable interests. They maintain that, in circumstances where there was a remote or "ancient period of non-use," see Appellee's Br. at 14, for any twenty-year period following severance of the mineral interest, and that non-use concluded before the effective date of the Act, the only manner in which the

7

mineral owner could have preserved that interest was to have filed a statement of claim under Section 4 of the Act before September 3, 1973. Templeton counters that Section 2 is ambiguous and, as such, should be strictly construed to limit its application to the twenty years immediately preceding the effective date of the Act. We agree with Templeton and the trial court.

The parties first dispute the scope of various statements made by the Indiana Supreme Court and the United States Supreme Court in their respective opinions in Short. In that case, certain mineral interests were severed from the surface rights of 132 acres of land in Gibson County in 1942, 1944, and 1954. In each scenario, the parties stipulated that the purported owners of the mineral interests never used their interests within the meaning of the Act and never filed statements of claims to secure their interests. Short, 454 U.S. at 521-22. In 1977, the surface owners informed the purported owners of the mineral interests of the lapse of those interests under the Act. The owners of the mineral interests filed suit to quiet title, and the Gibson Circuit Court declared the Act unconstitutional.

On direct appeal, the Indiana Supreme Court held that the Act was not unconstitutional. In particular, the court held that the Act did not violate due process or equal protection and that the Act did not constitute a taking without just compensation. Short, 406 N.E.2d at 627-32. The court assumed that the Act had some retroactive application based on the facts of the case, but the court did not expressly consider that issue.

8

On further appeal, the United States Supreme Court, in a 5-4 decision, affirmed the decision of the Indiana Supreme Court. The United States Supreme Court also did not expressly consider the degree to which the Act applied retroactively, though the Court did recognize that the Act had some retroactive application. In particular, the Court noted that the Act "contained a 2-year grace period in which owners of mineral interests that were then unused and subject to lapse could preserve those interests by filing a claim . . . ." Short, 454 U.S. at 518-19 (emphasis added).[7] Later, the Court stated:

> We have concluded that appellants [the purported owners of the mineral interests] may be presumed to have had knowledge of the terms of [the Act]. Specifically, they are presumed to have known that an unused mineral interest would lapse unless they filed a statement of claim. The question then presented is whether, given that knowledge, appellants had a constitutional right to be advised—presumably by the surface owner—that their 20-year period of nonuse was about to expire.
>
> In answering this question, it is essential to recognize the difference between the self-executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur. As noted by appellants, no specific notice need be given of an impending lapse. If there has been a statutory use of the interest during the preceding 20-year period, however, by definition there is no lapse—whether or not the surface owner, or any other party, is aware of that use.

Id. at 533-34 (emphasis added).

Here, Templeton asserts that the emphasized language above demonstrates that the Act has limited retroactive application, namely, to only the twenty years preceding its effective date. The Bonds assert that the Court's comments were fleeting and not binding on this court's interpretation of Indiana law. See, e.g., Kirby v. Ashland Oil Co., 463 N.E.2d 1127, 1129 n.3 (Ind. Ct. App. 1984) (noting that "we are not bound by [the

---

[7] Justice Brennan, writing for the four dissenting Justices, asserted that retroactive application of the Act was unconstitutional. Short, 454 U.S. at 554 (Brennan, J., dissenting).

Court's] interpretation of Indiana statutory law"). Instead, the Bonds continue, the fact that both the Indiana Supreme Court and the United States Supreme Court applied the Act to interests created as early as 1942 demonstrates that the Act applies to the time when the mineral interests are created, not only to within twenty years of the Act's effective date.

We are not persuaded by either Templeton's or the Bonds' use of the two Short opinions. Neither the Indiana Supreme Court's opinion nor the United States Supreme Court's opinion is binding authority in this appeal. Neither court expressly considered the scope of the Act's retroactive effect.[8] Further, the purported owners of mineral interests in Short had never used their interests. Thus, the holdings of the Indiana Supreme Court and the United States Supreme Court would have been the same regardless of whether the Act's retroactive effect was limited to twenty years before its effective date.[9] Here, on the other hand, it is not disputed that Templeton used its mineral interests from 1964 to the present by paying appropriate taxes, but that that use followed a thirty-five-year period of nonuse.

The only court to have expressly considered the scope of the Act's retroactive effect concluded that our legislature intended to limit the Act's reach to the twenty-year

---

[8] For the same reason, we do not consider McCoy v. Richards, 771 F.2d 1108 (7th Cir. 1985), which relied in substantial part on the United States Supreme Court's opinion in Short.

[9] For the same reason we need not consider this court's holding in Consolidation Coal Company, in which the mineral interests were created in 1943 and the owner of those interests used them by paying appropriate taxes every year following their creation. 565 N.E.2d at 1080. As the trial court noted, in Consolidation all taxes had been paid to date since the tax sale of the mineral interests in 1943, by the same persons who claimed an interest in the mineral estate, and on those facts no reversion of the coal estates occurred in favor of the surface owners under the Act.

period preceding the Act's effective date. Specifically, the United States District Court for the Southern District of Indiana has reasoned as follows:

> the Court determines that the twenty-year period of non-use must have occurred beginning on or after September 3, 1951, which is twenty years prior to the effective date of the Act.[10] The language of the Act is ambiguous; it refers to the extinguishment of an interest "if unused for a period of twenty years," which could either mean "an interest that has not been used for the past twenty years" or "an interest that has not been used for any twenty-year period since its creation."
>
> . . . In this case, the reading urged by the Defendants [that any twenty-year gap in use prior to 1973 causes a lapse of the interests] clearly is the less reasonable of the two and would lead to an unjust result. Requiring the owner of a mineral interest to either ensure that some act of use had occurred during the past twenty years or file a statement of claim is one thing; requiring that same owner to file a claim unless it could be certain that there was no twenty-year gap in "use" from the time of severance to 1973 is quite another.
>
> More importantly, the purpose of the statute is wholly fulfilled by the former reading; the State would gain nothing further by adopting the latter. . . . When, as in this case, the owner of the mineral interest had resumed use prior to the enactment of the Act, any uncertainty in title or other "mischief" caused by a prior period of misuse had been remedied, and requiring the now-active owner to file a statement of claim would add nothing. Therefore, the Court declines to read the Act as imposing such a requirement. Even if the mineral interests in this case were not "used" from 1925 to 1954, the fact that they have been used from 1955 to the present would have kept them from being extinguished by operation of the Act.

Am. Land Holdings, 655 F. Supp. 2d at 891-92 (footnote omitted).

The Bonds assert, and we acknowledge, that the district court's assessment of Indiana statutory law is not binding on this court, see, e.g., Kirby, 463 N.E.2d at 1129

---

[10] As discussed above, the date twenty years before the effective date of the Act was September 2, 1951, not September 3.

n.3, and, further, was "pure dictum,"[11] see Appellant's Br. at 16. Nonetheless, the district court's reasoning and conclusion are persuasive, and we agree with the court's assessment.

As the district court concluded, the scope of Section 2's retroactive application is ambiguous. The statutory language says: "An interest in coal, oil and gas, and other minerals, if unused for a period of twenty (20) years, is extinguished and the ownership reverts to the owner of the interest out of which the interest in coal, oil and gas, and other minerals was carved . . . ." I.C. § 32-23-10-2. As the district court explained, that language can reasonably be read to mean either any twenty-year period after the creation of the mineral interests or only the twenty-year period immediately preceding the Act's effective date. Am. Land Holdings, 655 F. Supp. 2d at 891.

The Bonds assert that the district court's reasoning is "wrong" and offer the following hypothetical in response:

> Assume a mineral interest created in 1984 is not used for a period of time up to and through 2005[,] which is a twenty-one (21) year period of time of no use. However, taxes are paid in 2007 and thereafter using the mineral interest for those years. Even under Templeton's argument and the trial court's conclusion, the expiration of the twenty (20) year period of time of nonuse and the failure to file a statement of claim during that twenty (20) year period causes the mineral interest to lapse whether or not there has been any use after that twenty (20) year period of time. There is no reason why there should be any different treatment for a period of no use for a mineral interest created in 1929.

Appellant's Br. at 16-17.

---

[11] On this issue, the district court held: "there was no twenty-year period from [the year of the creation of the interests] to the present during which the mineral taxes on the Subject Property went unpaid. However, even if there were, the Court does not believe that the mineral interest[s] would have been extinguished by the Act . . . ." Am. Land Holdings, 655 F. Supp. 2d at 890. The court then went on to consider the Act's retroactive effect in support of the alternative, hypothetical scenario that there had been a twenty-year period in which the taxes on the interests had gone unpaid. Id. at 891-92.

The problem with the Bonds' hypothetical, which the Bonds disregard on appeal, is that there is no question that the Act applies to the time frame presented in it. That the Act applies to present circumstances does not dictate that it applies retroactively to all circumstances. Indeed, the Bonds fail to consider that, at the time Templeton's interests were not used, 1929-1964, that nonuse was wholly consistent with the common law. See Consolidation Coal Co., 565 N.E.2d at 1080. As an act in derogation of the common law, the Act must be strictly construed. Clark, 971 N.E.2d at 62. And, again, the purpose of the Act was "to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable mineral resources." Short, 406 N.E.2d at 630.

Considering Section 2's ambiguity, the rule to strictly construe acts in derogation of the common law, and the Act's underlying purposes, we hold that Section 2 is limited in its retroactive application to only the twenty-year period immediately preceding the effective date of the Act, or September 2, 1951. A broad reading of Section 2 is not warranted by either the language or the purposes of the Act, as thoroughly explained by the district court. Am. Land Holdings, 655 F. Supp. 2d at 891-92. In addition to the district court's reasons, permitting the Act to apply broadly to any time period before its effective date could lead to absurd results, which we will not permit. See Curley, 896 N.E.2d at 34. For example, if an owner of mineral interests failed to use those interests from, say 1900 to 1921, but then actually mined them and exhausted them before 1971, it would be absurd to say that the 1971 Act retroactively stripped the owner of its interests, or its profits from those interests, based on the nonuse from 1900 to 1921. Moreover,

such an interpretation would create uncertainty in the ownership of mineral interests, which is exactly what the Act seeks to prevent.

Conversely, if an owner of mineral interests on September 2, 1951, failed to use those interests during the twenty-year period between then and the effective date of the Act, the Act granted the owner an additional two-year grace period to file a statement of claim to preserve its interests. But if the owner began to use its mineral interests after September 2, 1951, and before the effective date of the Act, there is no twenty-year period of nonuse for purposes of the Act and, hence, no lapse of the interests.

The latter scenario is what the parties' stipulated facts demonstrate happened here. After a thirty-five-year period of nonuse from 1929 to 1964, Templeton began paying appropriate taxes on its mineral interests, which is a "use" of those interests under Indiana Code Section 32-23-10-3(a)(6). Templeton has paid its taxes on those interests every year since 1964. The trial court entered a detailed and well-reasoned order for summary judgment on the issue of retroactivity, and we agree with the court that on the stipulated facts Templeton holds the record title to the mineral interests and that there has been no lapse of the mineral interests under the Act.[12] Therefore, we affirm.

Affirmed.

ROBB, C.J., and CRONE, J., concur.

_____

[12] The trial court acknowledged the extraordinary quality of the lawyering in this case as follows:

> The Court commends counsel for the parties on what is truly a shining example of masterful lawyering on behalf of their clients that distilled down to one count of the complaint the central issue in a massive, complex piece of litigation involving thousands of acres, thousands of pages of title and tax documentation, and an area of the law that is a matter of first impression in Indiana state courts concerning the interpretation and application of the Mineral Lapse Act.

Appellant's App. at 24.